Argued at Pendleton May 8, affirmed July 17, rehearing denied October 23, 1923.

## HANEY ET AL. *v.* NEACE–STARK CO. ET AL.

(216 Pac. 757; 219 Pac. 190.)

**Judgment — Prior Decree Expressly Omitting Issues Held not to "Adjudicate" Them—"Adjudge."**

1. In a suit to determine water rights, a prior decree in a suit between the same parties which expressly omitted to decide the issues submitted in the later suit did not constitute a prior adjudication as to such issues; to "adjudicate" being to settle in the exercise of judicial authority, to determine finally, and being synonymous with "adjudge" in its strictest sense.

**Waters and Watercourses—Water Right may be Sold and Transferred Separately from Land to Which Appurtenant.**

2. A water right may be sold and transferred separately from the land to which it is appurtenant, in view of Section 5764, Or. L., providing that, if it becomes impracticable to use water for irrigation of any land to which it is appurtenant, the right may be transferred without loss of priority, if such change can be made without detriment to existing rights.

**Judgment—Decree Settling Rights to Use Surplus Water Stored in Dams Held Binding as Former Adjudication.**

3. In a suit to determine the extent of water rights and the right to use surplus water captured and stored upon certain lands by means of dams, a former decree wherein such issue was settled *held* to bar relief by plaintiff as a former adjudication.

**Judgment—What Constitutes Former Adjudication Stated.**

4. Every necessary question properly before the court, tried and determined in a former suit, is conclusive of the same question in a subsequent proceeding between the same parties.

### ON PETITION FOR REHEARING.

**Judgment—Nature of Plea of "Former Adjudication" Stated.**

5. A plea of former adjudication is a plea in bar of further prosecution, on the ground that the same subject matter has been already litigated between the same parties or their privies and a judgment rendered on the merits.

**Judgment—Prior Judgment must have Been Rendered on Merits to Bar Further Litigation.**

6. For a plea of former adjudication to bar further litigation, under Sections 411, 756, Or. L., the judgment or decree must have been rendered on the merits.

**Equity—"Decree" Defined.**

7. A decree is a judgment or sentence of a court of equity, pronounced on the hearing of issues and determining the rights of the parties.

**Judgment—When Judgment is on "Merits" Stated.**

8. A judgment is on the merits, so as to bar further litigation, when it amounts to a declaration of the law as to the parties' respective rights and duties based on the ultimate facts disclosed by the pleadings and evidence, irrespective of formal technical or dilatory objections or contentions; "merits" meaning matter of substance as distinguished from matters of form.

**Judgment—Decree of Dismissal not Bar to Another Suit, Unless Material Issues Made by Pleadings are Determined.**

9. Under Section 411, Or. L., providing that "whenever * * it is determined that the plaintiff is not entitled to the relief claimed,"

---

2. Transfer of rights to use water for irrigation, see note in 65 L. R. A. 407.

a decree of dismissal shall be given, which shall bar another suit, a decree of dismissal is not a bar unless the material issues made by the pleadings are determined, though not stated to be without prejudice.

**Judgment—Defendant must Establish Defense of Former Adjudication.**

10. For defendant to avail himself of the defense of former adjudication, he must establish it.

**Judgment—Decree Dismissing Complaint for Insufficiency of Pleadings to Sustain Decree Adjudicating Water Rights Held not Res Adjudicata.**

11. Where the court, in a suit to determine water rights, refused to determine the issue because of the insufficiency of the pleadings to sustain a decree adjudicating such rights, and recorded, in its findings and conclusions, that such issue had not been determined, a decree dismissing the complaint did not bar another suit.

**Judgment—Not Admissible as Evidence of Matter not Adjudicated.**

12. A judgment or decree as to a matter in issue but not decided cannot be used as evidence between the parties in a subsequent action as to such matter.

From Baker: GUSTAV ANDERSON, Judge.

In Banc.

The plaintiffs in this case are Herman C. Haney and John E. Astner. The defendants are Neace-Stark Company a corporation; State Water Board of Oregon; Percy A. Cupper, State Engineer; George T. Cochran, member of the State Water Board; Rhea Luper, Assistant State Engineer, and Loy M. Turner, Water-master.

The plaintiffs filed their complaint in the Circuit Court of the State of Oregon for Baker County, and averred that they were the owners of certain lands situate in Baker County, Oregon, arid in nature and susceptible of irrigation, and that such lands, with sufficient water to irrigate the same and for the growing of crops thereon, would produce large crops of hay, grain, vegetables and other products. The pleadings contain a description of the lands.

It is averred by plaintiffs that on April 19, 1910, the predecessors in interest of plaintiffs filed with

the State Engineer an application for permission to appropriate ten cubic feet per second of the water of Powder River and its tributaries; that upon the approval of the application by the Engineer, their predecessors constructed a dam in the bed of Powder River, installed pumps and constructed ditches, and thereafter appropriated and diverted the waters of Powder River and its tributaries to the extent of 4.37 cubic feet per second thereof, and applied the water to beneficial uses in the irrigation of growing crops upon their lands hereinbefore referred to; that some of the lands were first irrigated in the year 1910, and that each year thereafter additional acreage was brought into cultivation and irrigated, until by the end of the irrigating season of the year 1913, all of the lands of plaintiffs, described in the complaint, had been reduced to a state of cultivation and the waters so appropriated had been beneficially applied thereto; that the State Water Board, upon the showing made by the plaintiffs, confirmed their appropriation of water and issued a certificate of water right to them, as successors in interest of the original appropriators, with the date of priority of April 19, 1910, to the extent of 4.37 cubic feet per second.

The complaint further alleged that since the year 1910 plaintiffs and their predecessors in interest had maintained in Powder River, at or near the original location thereof, a retaining dam and pumps driven by both steam and electric power, and that they had dug ditches, leading from their pumps to their land, for the distribution of water appropriated, and that the equipment for the appropriation and distribution of water upon their lands had been continuously maintained since 1910, except when interfered with by the defendants herein. It then avers that the

predecessors in interest of Neace-Stark Company, defendant, had, for years, maintained dams in Powder River, Baldock Slough and other small sloughs, above the point where plaintiffs' predecessors in interest diverted the waters of Powder River; that such dams caused the waters of Powder River and the sloughs, in the freshet season, to back up and overflow certain lands described in the complaint, belonging to the defendant Neace-Stark Company.

Plaintiffs then concede defendants' right to the use of such waters for the irrigation of their premises mentioned, but not for other purposes.

It is further averred that for more than forty years prior to 1913 the predecessors in interest of the defendants irrigated and grew large crops of wild hay upon their land, but that when the hay was ready to cut they removed the dams and drained the flooded lands by permitting the impounded waters to flow down the channel of Powder River, past the point where plaintiffs' dams and pumps are now situate.

Plaintiffs aver that the flowing of the captured water downstream augmented the supply of water in Powder River, which was a part of the appropriation made by their predecessors in interest at the time of the initiation of their rights.

They then aver that George T. Cochran, Rhea Luper and Loy M. Turner, Water-master, denied the right to plaintiffs' use of such water and allowed the defendant company to use the same in irrigating other lands, and that the defendant company and its predecessors in interest have wrongfully diverted and used the overflow waters and run-off waters and have taken and pumped the same upon lands brought into cultivation since the year 1910, without leave from plaintiffs and over their objections.

For a further cause of suit, the plaintiffs allege that one Joseph Borton was entitled to sufficient of the waters of Powder River for the irrigation of a certain tract of land consisting of 80 acres described in plaintiffs' pleading, with a date of priority of 1901; that his right was adjudicated by the State Water Board of Oregon and confirmed by the Circuit Court of Oregon for Baker County. Plaintiffs allege that an attempt was made by William Pollman, predecessor in interest of the Neace-Stark Company, and Joseph Borton, to sever from the lands of Borton the water right appurtenant thereto and to transfer it to other lands, and plead the order of the State Water Board reading as follows:

"And it appearing that the water right in question can no longer be beneficially or economically used on the lands to which it is now appurtenant, and that the proposed transfer can be made without detriment to existing rights,

"It is Ordered, that said application be, and the same is hereby, granted, and that the water right allowed under the Powder River decree to Joseph Borton, with a date of priority of 1901, for 80 acres (here follows description) be transferred and become appurtenant without loss of priority to the following lands, to wit: 39 acres [here follows description], and 40 acres [description]."

Plaintiffs aver that the transfer was without notice to plaintiffs and injurious to them, and that the Neace-Stark Company and its predecessors in interest have not only changed the place of use of the water so adjudicated to Joseph Borton, but that they have likewise changed the place of diversion.

Plaintiffs pray for a decree that they have prior right to defendant Neace-Stark Company, to the use of the waters of Powder River, Baldock Slough, and their tributaries, to supply their demands and appro-

priations of water for the irrigation of their lands described in the complaint, to the extent of 4.37 second-feet thereof as of the nineteenth day of April, 1910, except as to the priority conceded in their complaint, to the defendant; and for further relief by decreeing that defendant company be not permitted to use the water impounded for overflowing their lands, for any other purpose than such overflow, or in any other manner than the use that was made of the waters on April 19, 1910, except subject to the prior claims and rights thereto of plaintiffs; and for a decree setting aside the order of the State Water Board allowing the transfer of the place of the use of waters originally adjudicated to Joseph Borton; and for an order and decree enjoining the defendant company from operating its pumping plant for irrigation until the prior rights of plaintiffs have been supplied; and for an order denying to the State Water Board, the State Engineer, the defendants George T. Cochran, Rhea Luper, or Loy M. Turner, the right to interfere with the pumping operations of plaintiffs.

The defendant Neace-Stark Company, answering, describes, and alleges its ownership of, certain lands situate in Baker County, Oregon. It alleges that such lands are dry and arid in character and require irrigation to make the same productive, but that when irrigated such lands are very productive and yield large crops of hay, grain, and other produce, and that the water and water rights owned by defendant are necessary for the proper irrigation of defendant's lands.

The answer avers, among other things:

"That in the year 1911, the predecessors in interest of the defendant, Neace-Stark Company, con-

structed ten dams in Powder River, Baldock Slough and Middle Slough, and impounded the waters of Powder River and its tributaries, including said sloughs, for the irrigation of certain lands belonging to said defendant and hereinafter more particularly described. That the predecessors in interest of said defendant, Neace-Stark Company, constructed a dam in said Powder River near the Southwest corner of the Southeast Quarter of the Southwest Quarter of Section 11, in Township 8 South, Range 39 East of W. M., for the purpose of holding the water flowing in Powder River and catching and holding the water impounded by the dams constructed in said Powder River and said sloughs as aforesaid, and erected and constructed on the banks of said Powder River above said storage dam an electrical pumping plant and pipe lines leading therefrom to certain ditches used to convey water for the irrigation of the lands of said defendant. * *

"That in the year 1911, the predecessors in interest of * * Neace-Stark Company began the irrigation of said lands and ever since has and still continues to irrigate the same * * by releasing from time to time the water stored in the ten dams in Powder River, Baldock Slough and Middle Slough * * and permitting the same to run down said sloughs and Powder River to said storage dam hereinbefore described, and then by pumping the same through the pipe lines and into the ditches * * and using the same for irrigation of said lands of defendant * * .

"That upon application of the predecessors in interest of the defendant* * , the State Water Board of the State of Oregon issued to said predecessors * * a reservoir permit bearing No. 443 for the storage of water above the said ten dams as hereinbefore alleged, and issued permit No. 3957 authorizing and permitting the use of said stored water and other water upon the said lands of said defendant * * for the irrigation thereof."

For a further and separate answer to the plaintiffs' complaint, the defendant Neace-Stark Company pleads estoppel by a former judgment.

On March 22, 1921, the defendants, State Water Board of Oregon, Percy A. Cupper, State Engineer, George T. Cochran, member of the State Water Board, Rhea Luper, Assistant Engineer, and Loy M. Turner, Water-master, filed their answer, and after making certain admissions and denials, for a further and separate defense also pleaded former adjudication. Among other things, they aver:

"That the plaintiffs in this suit ought not to be permitted to maintain the cause of suit alleged in their complaint, for the reason that in a suit in equity commenced in the Circuit Court of the State of Oregon for Baker County on the 17th day of November, 1919, in which Herman C. Haney, John E. Astner, J. W. Cornelius and Arvid Saterbury, and the defendants herein, the Neace-Stark Company, a corporation, Percy A. Cupper, State Engineer of the State of Oregon, Rhea Luper, Assistant State Engineer, and Loy M. Turner, Water-master, were defendants, and for the same cause of suit as in the plaintiffs' complaint herein * * ."

A reply was filed, consisting of denials and new matter, to which new matter a demurrer was sustained.

Based upon the findings of fact and conclusions of law, the court, on the eighth day of September, 1922, decreed:

That plaintiffs, Herman C. Haney and John E. Astner, and the defendant Neace-Stark Company, are respectively the owners of certain described lands; that the plaintiffs and the defendant Neace-Stark Company are the owners of a retention dam constructed by them and their predecessors in in-

terest in Powder River, in the years 1911 and 1912, near the south line of section 2, township 8 south, range 39 east of the W. M., and of a pump-house near the dam, and of a power line leading to the pump-house, all of which improvements were constructed and installed at their joint expense under an agreement to operate the same as a joint enterprise; that plaintiffs are now the owners of a certain pump and pipe-line subsequently installed and constructed in and from the pump-house, and that the defendant Neace-Stark Company is the owner of the pump and pump line originally installed as stated above.

It was further decreed that the defendant Neace-Stark Company is the owner and in possession of, with the right to maintain, the storage dams constructed by its predecessors in interest, in Baldock Slough, above the retention dam. It was decreed that plaintiffs—

"have the right and are the owners of the water right with date of priority as of the year 1910, to divert and use from the natural flow of the waters, of said Powder River and its tributaries, at and by means of said retention dam and pumping plant, sufficient water, to the extent of 4.37 cubic feet per second, for the irrigation of the following described * * lands [here follows description].

"That said right is subsequent * * to each of the water rights hereinafter defined belonging to * * Neace-Stark Company, excepting, however, the one of said rights hereinafter defined and decreed to be subsequent and subject to plaintiffs' said right * * ;

"That defendant Neace-Stark Company has the right and is the owner of the water right, with date of priority as of year 1865, as said right is determined and defined in the decree duly entered in the matter of the adjudication of the Relative Rights to the Use of the Waters of Powder River and its

Tributaries, to divert and use of the waters of said Powder River and its tributaries sufficient, to the extent in said decree defined, for irrigation of the following described area of said defendant's said lands [description follows]; * * and is the owner of the water right with date of priority of the year of 1879, * * to the use of the waters of Powder River and its tributaries * * for the irrigation of two acres in the Northeast Quarter of the Northeast Quarter of Section 11, Township 8 South, Range 39 East, W. M. * * ."

The decree then recites that a certain adjudicated water right of priority as of the year 1901, appurtenant to 80 acres of land then belonging to one Joseph Borton, which water right was thereafter, by mesne conveyances, transferred to defendant, Neace-Stark Company, "is now the property of said defendant Neace-Stark Company and is now appurtenant to" 79 acres of land therein described; and that—

"said defendant has the right to divert and use upon said lands from the natural flow of said Powder River and its tributaries, with said date of priority, such quantity available under said right, at the original point of diversion as will reach defendant's point of diversion at the aforementioned retention dam; i. e., the said original quantity, less the quantity lost by seepage and evaporation, and that said right, to said extent, and not otherwise, is prior to plaintiffs' right as heretofore defined."

It was further decreed, "that said defendant, Neace-Stark Company, has the right, and is the owner of the right to capture and store water in its heretofore mentioned storage dams in Baldock Slough, to the extent of 287 acre-feet and that said right * * is limited to such of said waters as are not or would not be needed and used under prior rights or by plaintiffs during their irrigation seasons in diverting

and using waters of the natural flow under their right as heretofore defined.''

The court further decreed:

''That so long as said defendant Neace-Stark Company shall capture and store in its said storage dams only such waters as shall not be needed and used by others, or by plaintiffs, during their irrigation season under their said right as heretofore defined, said defendant has the right and is the sole owner of the right to let down in such manner and to such extent as its needs may require, its said stored water to said retention dam, and to therefrom divert and use all the water so stored as aforesaid for irrigation of the hereinafter described area of its lands, and for supplemental supply for land having a partial water right appurtenant thereto; and that in connection with said use of said stored water and for the same purpose, said defendant has the further right, subject, however, to plaintiffs' right as prior right, to divert and use from the natural flow of said Powder River and its tributaries such quantity of water as shall, with that of said other rights, equal one cubic foot per second for each acre of said area; the quantity to which such total supply is limited, inclusive of said stored water, being 5.88 cubic feet per second for said total area, the lands so referred to and to which said described rights are appurtenant being as follows [description follows];

''That said stored water, when lawfully captured and stored at times and in the manner heretofore stated being reduced to possession and stored in defendant's dams without depriving plaintiffs of the quantity available to them from the natural flow during their irrigation seasons under their right as of year 1910, said plaintiffs have no title or right to use of such water so captured and stored by said defendant Neace-Stark Company, and that defendant is the sole owner of the right to the use of the water lawfully captured and stored by it as aforesaid * * . ''

The decree then enjoins the plaintiffs, and all persons acting through or under them, from interfering with the use of the water, contrary to the terms thereof, and likewise enjoins the defendants from in any manner interfering, or depriving plaintiffs, or either of them, from diverting and using water, during their irrigation season, in the quantity to which they are entitled by the decree;

"that in the event that the said parties shall at any time find themselves unable to amicably divide and use the water under their respective rights as herein defined, either of them may, upon the filing of a duly verified statement showing such state of facts, apply for the water master to take charge * * ."

Defendants appeal and assert error on the part of the court in refusing to find and decree that the plaintiffs are barred by the former adjudication, and in decreeing to plaintiffs a priority of right of the year 1910, from the natural flow of Powder River and its tributaries.

The plaintiffs' chief contention on their appeal relates to the disposition of the "stored waters," as made by the court's decree, and to the transfer of the water right formerly belonging to one Joseph Borton.          AFFIRMED.   REHEARING DENIED.

For appellants there was a brief over the names of *Mr. Joseph J. Heilner* and *Messrs. Clifford & Correll,* with an oral argument by *Mr. M. D. Clifford.*

For respondents there was a brief and oral arguments by *Mr. C. H. McColloch* and *Mr. Frank C. McColloch.*

BROWN, J.—The brief of the defendant Neace-Stark Company asserts that the court erred in decree-

ing that plaintiffs Haney and Astner were the owners. of a water right, with date of priority as of the year 1910, with right to divert and use from the natural flow of the waters of Powder River and its tributaries, by means of a retention dam and pumping plant, sufficient water, to the extent of 4.37 cubic feet per second, for the irrigation of certain lands described in the decree.

The court's decree is based upon its findings of fact and conclusions of law, and is well supported by the evidence. In fact, the defendant does not attempt to point out in its brief wherein the evidence fails to support the findings of the court. We have read the record in its entirety, and we find that the court decided the question alluded to by Neace-Stark Company according to the weight of the evidence.

The Neace-Stark Company relies chiefly, if not wholly, upon the defense of former adjudication.

From the statement it will be noted that all the defendants pleaded former adjudication, in bar to the plaintiffs' right to prosecute the present suit. The court sustained that defense as to the state officials and the Water-master.

We will now examine the issues, the evidence received at the former hearing, the findings of fact and conclusions of law, and the decree entered in the former suit, with special reference to the issue above referred to.

On the seventeenth day of November, 1919, a complaint was filed in the Circuit Court of the State of Oregon for Baker County, in which Herman C. Haney, John E. Astner, J. W. Cornelius and Arvid Saterbury were plaintiffs, and Neace-Stark Company, a corporation, Percy A. Cupper, State Engineer, Rhea Luper, Assistant State Engineer, and Loy M. Turner,

Water-master, were defendants. Plaintiffs' complaint set out a description of the lands owned by each of them respectively and alleged that each of the plaintiffs owned a water right appurtenant to his tract of land described in the complaint, and named the date of priority of such water right. It also averred the place, method and means of diverting the waters from Powder River to the lands of plaintiffs. The complaint alleged that the predecessors of Neace-Stark Company, defendant therein, maintained dams in Powder River, Baldock Slough and other sloughs, and that since the adjudication of the water rights belonging to said defendant company, it had, contrary to plaintiffs' rights, diverted and used water which plaintiffs had a prior right to use, and that the State Engineer, his assistant, and the Water-master, had aided and abetted the defendants, to plaintiffs' injury.

The defendant Neace-Stark Company, answering the allegations of wrongful use alleged in the complaint, denied the same, and, in its answer, described tracts of land owned by it and asserted its claim to a water right as appurtenant thereto. It alleged the maintenance of dams by its predecessors in interest, as well as by itself, and asserted that the water rights claimed were exercised and used by means of such dams, together with pumps.

Defendant's brief, relative to its answer in the former suit, says:

"The water rights and method of use are pleaded merely defensively, and (the answer) concludes merely with a prayer for dismissal of the suit."

After the joinder of issues by the parties to that suit, it came on for trial, and the court thereafter made its findings of fact and conclusions of law, and

entered a decree of dismissal. That decree was never appealed from. We will refer hereafter to the court's findings of fact and conclusions of law filed in that case.

On January 27, 1921, two of the four plaintiffs in the former suit, Herman C. Haney and John E. Astner, commenced a suit in equity in the Circuit Court of the State of Oregon for Baker County, by filing a complaint averring their cause of suit as set forth in our statement herein. It will be noted that in the latter pleading the right of plaintiffs is pleaded with some particularity. It contains specific allegations as to the quantity of water and the nature of the right claimed, which were not found in the original pleading. The answer filed in this suit by the defendant Neace-Stark Company is almost identical with that in the former suit, except that it contains a more accurate description of its asserted water rights, and the former judgment is pleaded as an estoppel, in bar of this suit. The present case was tried in the same court and the evidence in the former suit, including stipulations, maps and exhibits, offered in the former suit, was received as testimony in the present suit. However, there was some additional testimony offered in this cause.

The Circuit Court found that the plaintiffs were not barred from the prosecution of this suit by the judgment in the former suit, and, based upon its findings of fact and conclusions of law, made the decree hereinbefore set out.

We find the issues attempted to be made in the pleadings in the former suit to be the issues joined in this suit. Hence, if a final adjudication was made by the Circuit Court, on the merits of the controversy between the parties, and that adjudication remains

unreversed, it is a bar to the prosecution of this suit. The Circuit Court was a court of competent jurisdiction. It rendered a judgment dismissing the cause. But was the judgment rendered by the court reached upon the merits of the cause, with full opportunity for a fair hearing?

We will now recur to the findings and conclusions upon which the judgment of the lower court in the former suit was based, and we find it there recorded that the court expressly refrained from adjudicating the cause upon its merits, except as to certain issues hereinafter noted. From Finding No. 18 we quote:

"That the extent of appropriations and application and use of water accomplished or perfected by the respective parties since, and beginning with, the year 1911, during which period said plaintiffs Haney and Astner and defendant's predecessors in interest operated said electric pump and ditches under an agreement as a joint enterprise, cannot be determined in this proceeding from the pleadings and evidence submitted; and for like reasons the respective rights and priorities as between said parties incident to said joint use since and beginning with the year 1911 cannot be determined or governed by any decree in this proceeding."

From paragraph 1 of the court's conclusions of law, we copy:

"That the extent of said plaintiffs' priority as of the year 1910 is prior to said defendant's right, to the extent that diversion, application and use were perfected at the time said agreement was entered into, and subject to said agreement; *the relative rights and extent thereof as between said parties not being herein determined and not subject to determination from the pleadings and evidence in this proceeding,* and that said priorities apply only to the natural flow of said Powder River and its tributaries, when the waters thereof are needed by the parties, and do

not apply to waters lawfully captured and stored during the periods when not used for irrigation under existing rights.''

It it not necessary for us to determine the theory of the court in refusing to decide that issue. The question is: Did the court decide that issue between the parties? There was a controversy between the litigants relating to certain relative rights to the use of water for purposes of irrigation. That issue in that controversy remains undecided. The court invoked the doctrine that—

''In order to give a judgment the merit of finality of an adjudication between the parties, it must be responsive, not only to the proofs, but to the issues tendered by the pleadings, because pleadings are the very foundation of judgments and decrees.'' 15 R. C. L., p. 607.

In the former case the plaintiffs pleaded not facts, but a conclusion, as to their ownership of the water right.

Moreover, in suits involving title to water rights, it has been said:

''The description of the right of the plaintiff should be pleaded with great particularity. The full extent of the right should be stated, the purpose for which the water is used, and the amount necessary for that purpose. * * The quantity of water claimed should be stated in cubic feet, acre feet, inches or gallons, or in some other definite measurement of water. * * In fact, in order to enable the court to make a decree quieting the title to a water right, which will be definite and certain, it must have before it specific allegations as to the nature and extent of the water right claimed, which, of course, must be sustained by the proof.'' 3 Kinney (2 ed.), pp. 2786, 2788.

1. But, regardless of the deficiency in the pleading, the pertinent fact is that the court refused to decide a specific issue upon its merits; and, hence, there being no decision, there was no adjudication as to that issue.

To adjudicate is:

"To settle in the exercise of judicial authority. To determine finally. Synonymous with 'adjudge' in its strictest sense. *United States* v. *Irwin,* 127 U. S. 125 (32 L. Ed. 99, 8 Sup. Ct. Rep. 1033, see, also, Rose's U. S. Notes)." Black's Law Dictionary.

In the former suit the court did not settle, in the exercise of its judicial authority, the relative rights of Herman C. Haney and John E. Astner and the Neace-Stark Company, to divert and use, during the irrigation seasons, the quantities of water required from the natural flow of Powder River and its tributaries, with a priority of 1910. The court having failed to adjudge the issue, it follows that there can be no successful defense of former adjudication.

By analogy, the following excerpt from *O'Hara* v. *Parker,* 27 Or. 156, 164 (39 Pac. 1004, 1005), is in point:

"It is * * well settled * * that when an essential allegation is wanting in a complaint to which a demurrer is sustained, followed by a decree of dismissal, which allegation is fully supplied in the second suit, the decree in the first is not a bar to the second, and this is so although the respective suits were instituted to enforce the same right, for the reason that the merits of the case as disclosed in the second complaint were not heard and decided in the former suit: *Gould* v. *Evansville etc. R. R. Co.,* 91 U. S. 526, 534 (23 L. Ed. 416); *Gilman* v. *Rives,* 35 U. S. (10 Pet.) 293 (9 L. Ed. 432, see, also, Rose's U. S. Notes); Black on Judgments, § 707."

In *Burnett* v. *Marrs,* 62 Or. 598, 602 (125 Pac. 838), the above case was cited with approval, as were the following authorities: 23 Cyc. 1152; 1 Freeman on Judgments (4 ed.), 267; *Hughes* v. *Walker,* 14 Or. 481 (13 Pac. 450); *Hoover* v. *King,* 43 Or. 281, 286 (72 Pac. 880, 99 Am. St. Rep. 754, 65 L. R. A. 790).

In *Pruitt* v. *Muldrick,* 39 Or. 353 (65 Pac. 20), it is said that a judgment cannot be set up in bar of a subsequent action unless it was a final judgment on the merits, adjudicating the rights in litigation in a conclusive and definite manner. In rendering the opinion the court, speaking through Mr. Justice WOL-VERTON, wrote:

" 'In order that a judgment may constitute a bar to another suit,' says Mr. Justice FIELD in *Hughes* v. *United States,* 71 U. S. (4 Wall.) 232 (18 L. Ed. 303, see, also, Rose's U. S. Notes), 'it must be rendered in a proceeding between the same parties or their privies, and the point of controversy must be the same in both cases, and it must be determined on its merits. If the first suit was dismissed for defect of pleading, or parties, or a misconception of the form of proceeding, or the want of jurisdiction, or was disposed of on any ground which did not go to the merits of the action, the judgment rendered will prove no bar to another suit.' Adopting this statement of the law, about the correctness of which there can be no controversy, if it can be gathered from the record that the merits of the controversy were not passed upon in the first proceeding, or that the judgment may have been given upon some point not affecting the merits, it does not rise to the authority of *res judicata,* and cannot be interposed as a bar to a second action for the same cause."

See 22 Am. & Eng. Ency. of Law (2 ed.), p. 769.

In *Crow* v. *Abraham,* 86 Or. 99 (167 Pac. 590), Mr. Justice MOORE said:

"To entitle a party successfully to invoke the plea of *res adjudicata,* the decision of a prior suit or action between the same parties must have been rendered upon the merits of the controversy." Citing Van Fleet's Former Adjudication, § 30; *Glenn* v. *Savage,* 14 Or. 567 (13 Pac. 442).

Again, this court has said:

"It is not the recovery by the defendants that constitutes the bar or estoppel, but the decision upon the merits of the question which is in dispute between the parties: *Dawley* v. *Brown,* 79 N. Y. 390; *King* v. *Townshend,* 65 Hun, 567 (20 N. Y. Supp. 602); same case, 141 N. Y. 358 (36 N. E. 513.)" *Hoover* v. *King,* 43 Or. 281 (72 Pac. 880, 99 Am. St. Rep. 754, 65 L. R. A. 790).

The legality of the transfer of an adjudicated water right appurtenant to a certain tract of land owned by Joseph Borton to a tract owned by the predecessors in interest of Neace-Stark Company was not adjudicated in the former suit, as is plainly disclosed by the court's findings and conclusions in that case. But in the present cause the court decided that contention in favor of the defendants, and the plaintiffs appeal.

From the pleadings and the evidence in this case, it appears that Joseph Borton was the owner of an adjudicated water right appurtenant to eighty acres of land in section 35, township 8 south, range 40 east of the Willamette meridian, and that William Pollman, the predecessor in interest of the defendant Neace-Stark Company, and Joseph Borton, under date of February, 1919, made and filed an application to the State Water Board, requesting that the board permit the transfer of the place of use of the water right appurtenant to the lands of Joseph Borton, to a tract of eighty acres in section 2, township 8 south,

range 39 east of the Willamette meridian. The application set forth the reasons for such change, and stated facts showing that it had become impractical beneficially to use water for the irrigation of the Borton lands, to which the water had been adjudicated.

Based upon this application and the recommendation of an official of the board, the water right was transferred by the State Water Board.

The plaintiffs assert in their cross-appeal that—

"Recent cases and legislation in Oregon restrict the water rights inseparably to the original place of use,"

and cite, in support thereof, *Williams* v. *Altnow,* 51 Or. 275 (95 Pac. 200, 97 Pac. 539); *Whited* v. *Cavin,* 55 Or. 98 (105 Pac. 396); Section 5764, Or. L.

These citations do not sustain plaintiffs' assertion.

The court said, in *Williams* v. *Altnow, supra:*

"And he may change the point of diversion or the place of use so long as it does not prejudice the rights of subsequent claimants: *Bolter* v. *Garrett,* 44 Or. 304 (75 Pac. 142); *McCall* v. *Porter,* 42 Or. 49 (70 Pac. 820, 71 Pac. 976); Long, Irrigation, § 50."

And, in *Whited* v. *Cavin, supra:*

"A change in the point of diversion and place of use may be made when it can be done without prejudice to the rights of others: *Hough* v. *Porter,* 51 Or. 318, 438 (95 Pac. 732, 98 Pac. 1083, 102 Pac. 728)."

Section 5764, Or. L., reads:

"All water used in this state for irrigation purposes shall remain appurtenant to the land upon which it is used; provided, that if for any reason it should at any time become impracticable to beneficially or economically use water for the irrigation of any land to which the water is appurtenant, said right may be severed from said land and simultaneously transferred and become appurtenant to other

land without losing priority of right theretofore established, if such change can be made without detriment to existing rights, on the approval of an application of the owner to the State Water Board. Before the approval of such transfer, an inspection shall be made by the State Engineer, his assistant, or a water master, who shall submit his report to the State Water Board, whereupon, by order, the Board shall approve or disapprove such transfer and prescribe the conditions therefor. Such order shall be subject to appeal as in this act provided.''

The plaintiffs then invoke *In re North Powder River,* 75 Or. 83 (144 Pac. 485, 146 Pac. 475), as supporting their contention that a water right is an inseparable appurtenance to land. The opinion in that case should be read in the light of the facts upon which the case was decided. In deciding that case, this court said, at page 95 (75 Or. 144 Pac. 489):

''Therefore, the milling company, not having used or needed the water in July after the 10th, and during August of each year, we find that it is not entitled thereto during that period of time. The water is subject to use by the appropriator next in priority. The milling company owned no interest therein that it could sell or transfer to others, and therefore the purchasers of a portion of the milling company's appropriation may not change the point of diversion. The purpose of its use or claim of priority therefor, from 1870, as disclosed by the facts in this case, and the attempt to change the point of diversion and the character of the use by Dalton, Smith and McPhee, was in violation of the rights of others.''

2. The water right of Joseph Borton was a valid property right that might be sold and transferred separately from his land: 1 Wiel, Water Rights (2 ed.), § 550; 2 Kinney, Water Rights, § 872.

The following quotation from the leading case of *Johnston* v. *Littlehorse Cr. Irr. Co.,* 13 Wyo. 208 (79

Pac. 22, 110 Am. St. Rep. 986, 70 L. R. A. 341), is a concise statement of the law:

"The only limitation upon the right of sale of a water right separate from the land to which it was first applied, and to which it has become appurtenant, laid down by any of the authorities, is that it shall not injuriously affect the rights of other appropriators. In other words, the burden upon the use must not be enlarged beyond that which rested upon it under the original appropriation, and while in the hands of the original appropriator, as he was entitled to and did use it."

It was said in *Slosser* v. *Salt River etc. Co.,* 7 Ariz. 376 (65 Pac. 332):

"Natural justice * * is subserved by recognizing the right of a water right holder to change his appropriation, under such circumstances, to lands capable of profitable cultivation, or to sell his right to another, to be used by the latter for a beneficial use recognized by the statute."

To similar effect is *Hard* v. *Boise City Irr. & Land Co.,* 9 Idaho, 589 (76 Pac. 331, 65 L. R. A. 407).

It is settled beyond dispute that a water right may be sold and transferred and its place of use changed, when such change does not injure the rights of others. In further support of the above, see case of *Squaw Creek Irr. Dist.* v. *Mamero,* 107 Or. 291 (214 Pac. 889), and authorities there cited.

The transfer of the water right in question was made in accordance with the mode prescribed by statute, and the rights of all were safeguarded by the decree of the court, by reason of the diminution in volume, if any, on account of the additional distance which the water flows to the new point of diversion.

The next point refers to waters impounded by the defendant Neace-Stark Company, and retained by the dams referred to in the pleadings herein, which waters were impounded from flood and from the surplus flow of waters at a time when not needed for irrigation. The court, in the present case, held and decreed that the defendant was entitled to these waters. The plaintiffs appeal from that part of the court's decree. The defendant Neace-Stark Company answers by urging former adjudication as to all the issues in the case.

The defendant's right to the use of the stored waters is the same, whether that right is decreed in the former suit or in the present litigation. In this, as in the former suit, the court found in favor of the defendant Neace-Stark Company on that issue.

3. So far as the stored waters are involved, we believe that the pleadings, the evidence offered in support thereof, together with the findings of fact, conclusions of law and decree, support the defendant's contention of former adjudication, as to that issue. After describing the lands, the court found as a fact:

"That ever since the commencement of the irrigation of said meadow lands the surplus waters coming down said Baldock Slough and not theretofore appropriated were captured and stored upon the said meadow lands by means of numerous dams in said slough; and that by reason of such water being so captured and stored, said meadow lands were flooded and irrigated thereby * * ; that immediately before the commencement of this proceeding the flow in the Powder River and tributaries became too low to supply the required quantity of water for all the parties and the said plaintiffs thereupon demanded of said defendant to remove the planks in

said dams in said Baldock Slough and to let the water stored therein to come down for said plaintiffs' use, and that upon defendant's refusing so to do the said water master was requested to, and did, go upon the premises to assume charge of the distribution of said waters, and that upon said water master's finding the flow in Powder River and tributaries being insufficient to supply any of the demands of the parties to this suit, and that said flow was sufficient only for owners of prior water rights below, caused said pumps to be closed, except that he permitted defendant to operate its pump for the purpose only of pumping such quantity of said stored water that had theretofore been captured and retained by said dams, since said water was so captured when not needed for irrigation, and that under said water master's direction no water was permitted to be so pumped as to in any manner diminish the volume of said natural flow, and that said water so pumped was then used for the irrigation of said hill lands, and did not include any of the quantity of said natural flow, and did not diminish the same.''

In this case the court held that the decree of former adjudication was well taken as to the water-master and the officials constituting the State Water Board. The decree in the former case went to the merits of the controversy relative to the lawful use of the impounded waters by the defendant Neace-Stark Company. It was never reversed. The findings of fact, conclusions of law and decree are in effect and hold that the use of the impounded waters by pumping the same on to the arid uplands of the Neace-Stark Company is lawful. To the same effect is the decree in the present suit relative to the impounded waters. Hence, it follows that the issue relating to stored waters having been determined in the former suit, that decision

is a bar to further litigation concerning that issue: Or. L., §§ 411, 756; *Hill* v. *Cooper,* 6 Or. 181.

4. Every necessary question properly before the court that was tried and determined by the lower court in the former suit is conclusive of that same question in this proceeding: *Runnells* v. *Leffel et al.,* 105 Or. 346 (207 Pac. 867); *Taylor* v. *Winn,* 104 Or. 383 (207 Pac. 1096); *United States Nat. Bank* v. *Shehan,* 98 Or. 155 (193 Pac. 658); *Stillwell* v. *Hill,* 87 Or. 112 (169 Pac. 1174). As to when an adjudication in respect to an issue bars any further controversy in respect thereto, 1 Van Fleet's Former Adjudication, page 512, says:

"My own definition, which is deduced from all the cases, is this: If a material issue, which is not merely collaterally in question nor incidentally cognizable, is contested in a court of competent jurisdiction and determined by a final judgment on the merits, it will be at rest, as between the adverse parties and their respective privies, in all other judicial proceedings."

The decree entered by the court in this cause properly protects the interests of all the parties to the litigation. Hence, the judgment appealed from is affirmed, without costs to either party.    AFFIRMED.

---

Rehearing denied October 23, 1923.

## ON PETITION FOR REHEARING.

(219 Pac. 190.)

*Mr. J. J. Heilner* and *Messrs. Clifford & Correll,* for the petition.

*Messrs. McColloch & McColloch, contra.*

BROWN, J.—The Neace-Stark Company, through its attorneys, has filed a petition for a rehearing.

For a full statement of the facts and issues involved herein, see *Haney* v. *Neace-Stark Co., supra,* 94 (216 Pac. 757).

The court expressly set forth in finding of fact No. 18—

"That the extent of appropriations and application and use of water * * cannot be determined in this proceeding from the pleadings and evidence submitted," and that, "for like reasons the respective rights and priorities * * cannot be determined or governed by any decree in this proceeding."

In its conclusions of law, paragraph 1, the court found that—

"The relative rights (to the waters) and extent thereof as between said parties" were not "determined and not subject to determination from the pleadings and evidence in this proceeding."

The decree reads:

"And the court having made and filed its findings of fact and conclusions of law, it is now, by virtue of the law and the findings aforesaid, considered, ordered and decreed that this suit be, and the same hereby is, dismissed and that neither party recovers costs or disbursements of the other."

5. The petition presents the question of *res adjudicata.*

"Former adjudication is, when pleaded, a plea in bar of the further prosecution of a suit, on the ground that the same subject matter has been already litigated between the same parties, or their privies, and a judgment rendered on the merits of the case." 9 Ency. Plead. & Prac., pp. 611, 612.

6, 7. To be effectual as a bar to further litigation, the judgment or decree, within the provisions of Sections 411 and 756, Or. L., must have been rendered on the merits of the cause: *Toy* v. *Gong,* 87 Or. 454

(170 Pac. 936); *Hoover* v. *King,* 43 Or. 281 (72 Pac. 880, 98 Am. St. Rep. 754, 65 L. R. A. 790).

"A decree is the judgment or sentence of a court of equity. It is pronounced on the hearing of issues and determines the rights of the parties to the suit." 16 Cyc. 471.

In order to state a good cause of defense, the defendant averred that in the former suit the decree was rendered upon the merits of the case, and, in order to sustain its plea of former adjudication, made the following offer of evidence:

"Judge Clifford: Now, * * in support of our plea of former adjudication, I desire at this time to offer in evidence the judgment-roll of the court in the case of *Herman C. Haney* * * v. *Neace-Stark Company* * * , and particularly the complaint in the case, the answer * * , also the findings of fact and conclusions of law found by this court, the decree of this court, and also the opinion of this court."

The offer was received. But the record discloses the fact that the former case was not decided upon its merits.

8. When is a case decided upon its merits? A common definition of "merits" is:

"Matter of substance, in law, as distinguished from matter of form or technicality." *Rahn, Admr.,* v. *Gunnison,* 12 Wis. 588; cited in Black's Law Dictionary, 2 Pope Legal Definitions, Cyc. Law Dictionary, Adjudicated Words & Phrases, Winfield, 5 Words & Phrases, First Series, 4493.

"A 'defense upon the merits' is one which depends upon the inherent justice of the defendant's contention, as shown by the substantial facts of the case, as distinguished from one which rests upon technical objections or some collateral matter. Thus, there may be a good defense growing out of an error in the plaintiff's pleadings, but there is not a defense

upon the merits unless the real nature of the transaction in controversy shows the defendant to be in the right.'' Black's Law Dictionary.

''As a technical legal term, 'merits' has been defined as matter of substance, in law, as distinguished from matters of form, and as the real or substantial grounds of action or defense, in contradistinction to some technical or collateral matter raised in the course of the suit. The judgment is upon the merits when it amounts to a declaration of the law as to the respective rights and duties of the parties, based on the ultimate facts or state of facts disclosed by the pleadings, and evidence upon which the right of recovery depends, irrespective of formal, technical, or dilatory objections or contentions.'' 5 Words & Phrases, First Series, 4494.

'' 'Merit': The intrinsic rights and wrongs of a case as determined by matters of substance, in distinction from matters of form; the strict legal rights of the parties, as distinguished from those depending upon questions of practice, jurisdiction, competence, discretion, favor, or the like.'' Webster's New International Dictionary.

9, 10.  The defendant Neace-Stark Company takes exception to the following excerpt from the former opinion, reading:

''But, regardless of the deficiency in the pleading, the pertinent fact is that the court refused to decide a specific issue upon its merits; and, hence, there being no decision, there was no adjudication as to that issue. * * In the former suit the court did not settle, in the exercise of its judicial authority, the relative rights of Herman C. Haney and John E. Astner and the Neace-Stark Company, to divert and use, during the irrigation seasons, the quantities of water required from the natural flow of Powder River and its tributaries, with a priority of 1910. The court having failed to adjudge the issue, it follows that there can be no successful defense of former adjudication.''

The petitioners assert that to allow the opinion of the court to stand will result in a "complete nullification of Section 411, Or. L., and a direct reversal of several opinions of this court heretofore rendered, construing that section of our Code." In other words, the contention of petitioners is, in effect, that whenever a trial court shall enter a decree dismissing a suit, unless such decree expressly provides that it is without prejudice to another suit by the plaintiff for the same cause, it shall constitute a bar to the second suit, although the issues are undetermined in the prior suit. Such is not the law, and neither the section of the Code referred to nor the decisions of this court sustain the defendants' contention. That section of the Code provides, among other things:

"Whenever, upon the trial, it is determined that the plaintiff is not entitled to the relief claimed, or any part thereof, a decree shall be given dismissing the suit, and such decree shall have the effect to bar another suit for the same cause, or any part thereof * * ."

Mark the language: "Whenever * * it is determined that the plaintiff is not entitled to the relief claimed," etc. By the language of this section, before there is a decree of dismissal that constitutes a bar, there shall be a determination by the court. A determination of what? The material issues, as made by the pleadings, of course.

In the instant case, the court made no determination of the issue in question. The court expressly said so, and its declaration is of record and has been received in evidence by the offer of the defendant, for the purpose of proving its plea of former adjudication. The defendant made the record. It is in-

cumbent upon him who would avail himself of the defense of former adjudication to establish it. The evidence that has been offered and received into the record not only fails to prove that the matter at issue was adjudicated in the former hearing, but conclusively establishes that the court made no determination of the vital issues above noted.

The Oregon authorities cited are in harmony with our holding in the principal opinion. Those cases were decided upon the merits, while the decree pleaded as a bar in this cause was not given upon the merits. The petitioner quotes language used by Mr. Justice HARRIS in *Ton Toy* v. *Gong*, 87 Or. 454 (170 Pac. 936). That case not only fails to support the contention of petitioner, but is authority for our holding in the former case. Quoting from the body of the opinion, we have:

"The pleadings, findings of fact and conclusions of law filed in the suit in equity were competent for the purpose of showing that the question of partnership was actually involved in the decree and actually and necessarily decided: *Gentry* v. *Pacific Live Stock Co.*, 45 Or. 233, 238 (77 Pac. 115); *Astoria* v. *Astoria & Col. Riv. R. Co.*, 67 Or. 538, 549 (136 Pac. 645, 49 L. R. A. (N. S.) 404); 23 Cyc. 1292; 15 R. C. L. 979, 980, 1048, 1049.

"The record discloses that the question of the existence of the partnership was actually decided and necessarily included in the decree, and the decision of that question was necessary to the decree; * * the decree of dismissal was not made 'without prejudice to another suit by the plaintiff for the same cause, or any part thereof,' but it was an unqualified decree of dismissal on the merits, and is therefore *res adjudicata.*"

You will note that the Justice is careful to say that—

"The question * * was actually decided and * * that * * it was an unqualified decree of dismissal on the merits";

and, "the pleadings, findings of fact and conclusions of law filed in the suit * * were competent" evidence of the court's determination.

The opinion in *Swift* v. *McPherson,* 232 U. S. 51 (58 L. Ed. 499, 34 Sup. Ct. Rep. 239, see, also, Rose's U. S. Notes), is pertinent. It was claimed in that case, as in this, that a dismissal in equity, without qualifying words, is a final decision on the merits. Mr. Justice LAMAR, in expressing the opinion of the court, said:

"Ordinarily such a question [former adjudication] is answered by a mere inspection of the decree—the presumption being that a dismissal in equity, without qualifying words, is a final decision on the merits. That presumption of finality, however, disappears whenever the record shows that the court did not pass upon the merits but dismissed the bill because of a want of jurisdiction, for want of parties, because the suit was brought prematurely, because the plaintiff had a right to file a subsequent bill on the same subject matter, or on any other ground not going to the merits. The scope of such decree must in all cases be measured, not only by the allegations of the bill, but by the ground of the demurrer or motion on which the dismissal was based: *Hughes* v. *United States,* 4 Wall. (U. S.) 232, 237 (18 L. Ed. 303); *Mayor of Vicksburg* v. *Henson,* 231 U. S. 259 (58 L. Ed. 209, 34 Sup. Ct. Rep. 95, see, also, Rose's U. S. Notes).

The following statement of the rule of former adjudication also is applicable to this case:

"A judgment of a court of competent jurisdiction upon a question directly involved in one suit is conclusive as to that question in another suit between the same parties; and all matters presented or pre-

sentable under the issue, either to sustain or defeat the demand litigated in a prior suit, are concluded by the judgment in such prior suit; but to this operation of the prior judgment it must appear either from the record or by extrinsic evidence, that the precise question was raised and determined in the prior suit: *Le Grand* v. *Rixey,* 83 Va. 862 (3 S. E. 864); *Jarboe* v. *Severin,* 112 Ind. 572 (14 N. E. 490)." Note, 8 Am. St. Rep. 229.

The following observation from this court is in point:

"A question in issue cannot be considered settled by the verdict, when the jury were instructed that such issue was immaterial." *Bingham* v. *Honeyman,* 32 Or. 129 (syl.), (51 Pac. 735, 52 Pac. 755).

"To entitle a party successfully to invoke the plea of *res adjudicata* the decision of a prior suit or action between the same parties must have been rendered upon the merits of the controversy: Van Fleet's Former Ad., § 30; *Hughes* v. *Walker,* 14 Or. 481 (13 Pac. 450); *Glenn* v. *Savage,* 14 Or. 567 (13 Pac. 442); *O'Hara* v. *Parker,* 27 Or. 156 (39 Pac. 1004); *Pruitt* v. *Muldrick,* 39 Or. 353 (65 Pac. 20); *Burnett* v. *Marrs,* 62 Or. 598 (125 Pac. 838).

" 'The judgment is upon the merits when it amounts to a declaration of the law as to the respective rights and duties of the parties, based on the ultimate facts or state of facts disclosed by the pleadings, and evidence upon which the right of recovery depends, irrespective of formal, technical, or dilatory objections or contentions.' 5 Words & Phrases, 4494.

"An examination of the opinion announced in *Crow* v. *Crow,* 70 Or. 534 (139 Pac. 854), will show that all the testimony given at the trial was carefully considered on appeal in order to determine that Henry G. Crow was guilty of laches whereby his claim to equitable relief was rendered stale. That decision was within the issues and predicated upon a review of the testimony, thereby rendering the final conclu-

sion reached a decree upon the merits." *Crow* v. *Abraham*, 86 Or. 99, 103, 104 (167 Pac. 590, 591).

A leading case is *Russell* v. *Place*, 94 U. S. 606, 608, (24 L. Ed. 214, see, also, Rose's U. S. Notes). In that case, Mr. Justice FIELD, in expressing the opinion of the court, observed:

"It is undoubtedly settled law that a judgment of a court of competent jurisdiction, upon a question directly involved in one suit, is conclusive as to that question in another suit between the same parties. But to this operation of the judgment it must appear, either upon the face of the record or be shown by extrinsic evidence, that the precise question was raised and determined in the former suit. If there be any uncertainty on this head in the record—as, for example: if it appear that several distinct matters may have been litigated, upon one or more of which the judgment may have passed, without indicating which of them was thus litigated, and upon which the judgment was rendered—the whole subject matter of the action will be at large, and open to a new contention, unless this uncertainty be removed by extrinsic evidence showing the precise point involved and determined. To apply the judgment, and give effect to the adjudication actually made, when the record leaves the matter in doubt, such evidence is admissible."

The case of *Teal* v. *Terrell*, 48 Tex. 491, is directly in point. In that case the court said, at page 508:

"While it is not controverted that as a general principle, the judgment or decree of a court of competent jurisdiction is not only final as to the matters actually determined thereby, but also upon all matters properly involved in the issue passed upon and determined by the court, and that all matters put in litigation in a previous suit, and which could have been adjudicated therein, are concluded by it, * * but certainly it cannot be so held, where the record clearly shows that the matter in question was not, in fact, passed upon or adjudicated by the court."

By analogy, the following applies:

"Where the finding of fact on which a conclusion of law is based can be ascertained with certainty from the judgment-roll, such finding will constitute an estoppel." *Doyle* v. *Hamilton Fish Corp.*, 234 Fed. 47 (syl.), (148 C. C. A. 63).

In a note by Mr. Freeman, 56 Am. St. Rep. 445, it is said:

"An adjudication made on grounds purely technical, and where the merits could not come into question, is limited to the point actually decided, and will not preclude a subsequent action brought in a way to avoid the objection which proved fatal in the first: *Converse* v. *Sickles,* 146 N. Y. 200 (40 N. E. 777, 48 Am. St. Rep. 790). * * Uncertainty as to what was in fact decided_is fatal to the use of a judgment as an estoppel: *Fahey* v. *Esterly Machine Co.,* 3 N. D. 220 (55 N. W. 580, 44 Am. St. Rep. 554)."

Valuable cases holding that the merits must be determined to constitute former adjudication are found in notes, 18 Am. St. Rep. 785, 37 Am. St. Rep. 228, 96 Am. Dec. 785. See, also, 1 Freeman on Judgments (3 ed.), §§ 260, 266; 1 Herman on Estoppel, § 278; 2 Black on Judgments, §§ 693, 694.

In the recent case of *Barnes* v. *Anderson* (Or.), 217 Pac. 836, 838, 839, Mr. Justice McCOURT wrote:

"If * * a hearing and decision upon the merits of plaintiff's claim * * was had * * , the plaintiff is estopped from retrying the same issue in this suit. But, if the * * suit was disposed of on any ground which did not go to the merits of plaintiff's claim * * , the decree rendered therein does not bar this suit (loc. citation)."

The court further said:

"The record in the foreclosure suit shows beyond question that identically the same issues concerning

plaintiff's title to the land in question as are presented in the instant suit were before the court for determination in the foreclosure suit, and that such issues were necessarily considered and decided therein, and that they were actually heard and determined by the court in that suit, upon identically the same evidence that was submitted in the instant suit, and it also appears that the court had jurisdiction of the parties and of the subject matter.''

Note that the court observes that the issue was actually heard and determined. It further appears in the opinion:

"Both suits were tried by the same judge, who, in the instant case, made the unequivocal declaration, in a finding of fact, that 'all the matters and things complained of by the plaintiff herein were adjudicated and determined' in the foreclosure suit. The finding so made is entitled to much weight in determining the question of whether the merits of plaintiff's claim of paramount title were tried in the foreclosure suit.''

11. In the instant case Herman C. Haney and others filed suit in a court of equity, seeking to have their water rights determined. The defendants answered. The lower court refused to determine the issue referred to, because of the plain insufficiency of the pleadings to sustain a decree adjudicating the water rights in issue. In the findings of fact and conclusions of law, the court recorded that the issue had not been determined, and sent the plaintiffs out of court by a decree dismissing their complaint. Such a decree, rendered under the circumstances related, does not adjudge the water rights of Haney and others to be the property of the Neace-Stark Company or of anybody else. In a court of conscience, the title to property is not settled that way.

In this cause, as in *Barnes* v. *Anderson, supra,* the cases were both tried by the same judge. There is this distinction, however, between the two cases: In the former hearing of this case the issues were not determined, while in the first trial of *Barnes* v. *Anderson,* the issues were "actually heard and determined by the court." In *Barnes* v. *Anderson, supra,* it was held that the finding made by the trial judge was entitled to weight in settling a question as to whether the merits were passed upon in the prior suit of that cause. By the same reasoning, the statement of Mr. Justice ANDERSON in the instant case is of value when he records in his findings of fact and conclusions of law that the merits of the former case were not decided.

12. Again, repeating the rule of evidence as concisely stated by the editors of Encyclopedia of Evidence:

"If it clearly appear from the record that a matter was embraced within the issue raised in the cause, but not decided, the judgment or decree as to such matter cannot be used as evidence between the parties in a subsequent action as to such matter not adjudicated in the former suit." 7 Ency. of Ev., pp. 832, 833.

And again, let us quote from a standard authority:

" * * The judgment must be upon the merits in a competent action, the plaintiff having sued in his proper character, and the pleadings having been correct. 'If the first suit was dismissed for defect of pleadings or parties, or a misconception of the form of proceeding, or the want of jurisdiction, or was disposed of on any ground which did not go to the merits of the action, the judgment rendered will prove no bar to another suit.' * * A contrary rule would be founded in such rank injustice as to be

insupportable, and had such an one been even entertained in the earlier ages of the law, when reason and truth were but too often made to give way before the fancied force of technical subtleties and hairdrawn distinctions, it must long since have succumbed to the enlightened wisdom which tolerates litigation only as a means of administering uniform justice." 2 Black on Judgments, § 693.

The motion for rehearing is denied.

REHEARING DENIED.