Argued October 11, affirmed December 29, 1927.

# E. HENRY WEMME COMPANY v. BEN SELLING ET AL.

## (262 Pac. 833.)

**Trusts—Decree Denying Relief to Residuary Legatee, Seeking Property of Charitable Trust on Ground That Trust was Invalid and had Lapsed, Affirmed.**

In action by residuary legatee under will creating a charitable trust for a maternity home for unmarried mothers, for purpose of acquiring possession and title to the property of the charitable trust and asking that a resulting trust be declared in its favor, on ground that the trust was invalid and had lapsed, decree denying relief prayed for affirmed.

Charitable uses in the United States, see note in 9 **Am. Dec.** 577. What are charitable uses, see note in 63 **Am. St. Rep.** 248. Validity of trusts for charities, see note in 67 **Am. Dec.** 184. See 5 **R. C. L.** 291.

Appearances, 4 **C. J.**, p. 1322, n. 64, p. 1323, n. 71 New, p. 1346, n. 82.

Attorney and Client, 6 **C. J.**, p. 631, n. 76, p. 633, n. 88.

Charities, 11 **C. J.**, p. 307, n. 20, p. 315, n. 3, p. 368, n. 74 New, p. 371, n. 34 New.

Corporations, 14 **C. J.**, p. 850, n. 70. 14a **C. J.**, p. 81, n. 50, p. 812, n. 74, 79.

Courts, 15 **C. J.**, p. 850, n. 51, p. 851, n. 61, p. 929, n. 70.

Equity, 21 **C. J.**, p. 275, n. 51, p. 276, n. 58 New.

Federal Courts, 25 **C. J.**, p. 694, n. 94, p. 723, n. 51, p. 726, n. 83, p. 777, n. 76.

Judgments, 34 **C. J.**, p. 274, n. 76.

Parties, 30 **Cyc.**, p. 126, n. 48.

Trusts, 39 **Cyc.** p. 643, n. 6.

Vested, 40 **Cyc.**, p. 198, n. 92.

Wills, 40 **Cyc.**, p. 1054, n. 86, p. 1418, n. 48, p. 1419, n. 51.

From Multnomah: LOUIS P. HEWITT, Judge.

In Banc.

AFFIRMED.

For appellant there was a brief and oral arguments by *Mr. Thomas Mannix, Mr. Thomas G. Greene* and *Mr. Martin L. Pipes.*

For respondents there was a brief over the names of *Messrs. Joseph, Haney & Littlefield* and *Mr. John C. Veatch,* with an oral argument by *Mr. E. V. Littlefield.*

BROWN, J.—This suit is prosecuted by E. Henry Wemme Company, a corporation, for the purpose of acquiring possession and title to the property of a charitable trust created by the will of E. Henry Wemme and declared as such by this court. See *Wemme* v. *First Church of Christ, Scientist, of Portland,* 110 Or. 179 (219 Pac. 618, 223 Pac. 250).

The history of the litigation involving the construction of the will of E. Henry Wemme is substantially as follows:

On June 13, 1922, August Wemme, Julius Wemme, Paulina Grohmann, Anna Schubert and Johann Wemme brought suit in the Circuit Court of Multnomah County, Oregon, against the First Church of Christ, Scientist, of Portland, Oregon, and five other Scientist churches of Portland, in which they prayed for an accounting for all moneys and properties coming into their hands by virtue of their control of the stock of the E. Henry Wemme Endowment Fund, a corporation, and that the defendants be required to turn over all property of the E. Henry Wemme Endowment Fund, including the stock thereof, to plaintiffs; for the appointment of a receiver pending the suit, and for further relief as the facts might admit. On July 10, 1922, the plaintiffs filed an amended complaint against the First Church of Christ Scientist, of Portland, Oregon, and four other Scientist churches of Portland, and made the E. Henry Wemme Endowment Fund of Portland, Oregon, a

party defendant. On October 19, 1922, the plaintiffs filed a second amended complaint, naming as parties defendant the six Scientist churches of Portland, the E. Henry Wemme Endowment Fund, and the Attorney General of Oregon. The defendant churches and the E. Henry Wemme Endowment Fund filed a joint answer. The Attorney General, answering, intervened and asked that the trust created under the Wemme will be declared to be a public charity, and that the testator's bequest and declaration be carried into effect and the charity perpetuated. From the decision denying the relief prayed for, an appeal was taken by the Attorney General, August Wemme, Julius Wemme, Paulina Grohmann, Anna Schubert and Johann Wemme and E. Henry Wemme Company, of Portland, Oregon, upon all questions arising from the transcript. On October 23, 1923, this court, by its opinion, decided and determined the nature and character of the charity created by the will of E. Henry Wemme, and ascertained and declared the then present and visitorial authority for administering that trust, and by the mandate issued out of this court as a result of the decision it was ordered and directed:

"That the purpose for which the testator devised his property was to have the E. Henry Wemme Endowment Fund carry on the particular charity designated as a maternity home or lying-in hospital; that the testator, E. Henry Wemme, intended to impose an absolute liability upon the defendant churches to maintain such maternity home, until some time when that form of charity would be less beneficial to humanity than some other form; that the contingency has not yet arisen; * *

"It is therefore considered, ordered and decreed that this cause be remanded to the court below, from

which this appeal was taken, with directions to appoint not less than three nor more than five competent and qualified trustees, to take over all of the property of the E. Henry Wemme Endowment Fund, and to administer the trust, and to require the defendant churches to account for all moneys and properties belonging to the E. Henry Wemme Endowment Fund that have come into their hands or possession.''

It was further directed that the lower court ''ascertain and determine the reasonable compensation which should be paid to the attorneys, * * and to cause the same to be paid from the trust estate.''

For the opinion in the case, which contains a copy of the will, see *Memme* v. *First Church of Christ, Scientist, of Portland,* 110 Or. 179 (219 Pac. 618, 223 Pac. 250). For later decisions of the court, treating the fund in question as a charitable trust, and awarding compensation for its salvage, see *Wemme* v. *First Church of Christ, Scientist,* 111 Or. 386 (227 Pac. 277), and *Wemme* v. *First Church of Christ, Scientist,* 115 Or. 281 (237 Pac. 674). This plaintiff's interest arises from paragraph 8 of the will of E. Henry Wemme, wherein it is made residuary legatee. The plaintiff company was incorporated for $100,000 during Wemme's lifetime, and its stock divided into 100 shares, of the par value of $1,000 each. This stock was originally owned by Wemme, who died in 1914, and left 92 per cent thereof to his relatives, then residing in Germany. Under the will, August Wemme received 22 shares, Julius Wemme 20 shares, Paulina Grohmann 20 shares, Anna Schubert 22 shares, and Johann Wemme 8 shares. Following the entry of the United States into the World War, this stock was seized by the Alien Property

Custodian under the provisions of the "Trading with the Enemy Act."

Being dissatisfied with the decision of this court holding that the above-described property, known as the E. Henry Wemme Endowment Fund, constituted a charitable trust, Howard Sutherland, as Alien Property Custodian for the United States of America, and this plaintiff, E. Henry Wemme Company, a corporation, instituted a suit in the federal court against Ben Selling, Dr. Allen P. Noyes, Edgar H. Sensenich, Irene Gerlinger and Oscar C. Bortzmeyer, as trustees of the E. Henry Wemme Endowment Fund created by the terms of the will of E. Henry Wemme, praying for a decree against the trustees, and requiring them to account for all the property received by them under the decree of this court hereinbefore referred to; for injunctive relief against the trustees; that a trust be declared in favor of the plaintiffs, on the ground of a lapsed devise; and "that the judgment of the state court of Oregon and all acts by the public trustees appointed in its behalf thereunder by the court be declared, in so far as it divests the E. Henry Wemme Company of the assets of the E. Henry Wemme Endowment Fund under clause 8 of the will, null and void and in contravention of the Fourteenth Amendment to the Federal Constitution and the Due Process of Law clause thereof." The defendants moved to dismiss the plaintiffs' bill of complaint, upon the ground that it failed to state facts sufficient to constitute a cause of suit, and that the federal court was without jurisdiction to hear the case. The motion was overruled by that court, and the late Judge Chas. E. Wolverton, before whom the motion was heard, set forth

his reasons therefor in the following language, clear and understandable:

"If the bequest to charity is valid, as was declared by the Supreme Court, there was no occasion for taking it over (by the Alien Property Custodian), because it was not alien enemy property. But if the charity clause is void, as plaintiffs claim, the property goes to the E. Henry Wemme Company, and, of course, will enhance the value of the stock of that company. So that it depends upon whether the devise to charity is a valid gift, and upon this question depends the further standing for insisting upon a recovery of the property in question. If the devise to charity is valid, then of course he has no standing. But the pleadings present the issue, and the mere fact that the claim is there, whether maintainable or not, involves, by the contentions growing out of it, the federal questions previously suggested."

The case was heard in the Federal District Court, and Judge WOLVERTON dismissed the bill of complaint upon the ground, first, that the decision of the Supreme Court of the State of Oregon construing the law was binding on the federal courts sitting in this state; and on the further ground that, whether binding or not, the decision of the Supreme Court of this state was correct.

The Alien Property Custodian and the E. Henry Wemme Company, a corporation, dissatisfied with the decision of Judge WOLVERTON, appealed the case to the United States Circuit Court of Appeals. In that connection, see 16 Fed. (2 ed.), 865, for the opinion of Judge RUDKIN, who, speaking for that court, said:

"This is but another illustration of attempts so often made to circumvent the judgments and decrees

of state courts of competent jurisdiction by appealing to the federal courts on some fancied constitutional ground. Here the testator had his domicile in the state of Oregon, his will was made and probated there, his property was there, the trustees named in his will were there, as were the objects of his bounty. The Supreme Court of the state had full and complete jurisdiction over the subject-matter of the action, with competent parties before it, the Attorney General of the state upholding, and the churches opposing, the charitable trust created by the will. Thus vested with jurisdiction, the highest court of the state has construed the will and the laws of the state, and that construction is binding on a federal court sitting in the same state, regardless of any question of parties or of *res adjudicata.* The decision not only fixed the rights of the parties to that litigation, but it likewise established the law of charitable trusts in that jurisdiction, so far as the federal courts are concerned. * *

"We fully agree with the court below that the decision of the Supreme Court of the State of Oregon is sound in principle and is controlling here."

The plaintiffs next undertook to appeal to the Supreme Court of the United States, but their petition for a writ of *certiorari* was denied: See *Wemme* v. *Selling,* 273 U. S. 760 (71 L. Ed. 549, 47 Sup. Ct. Rep. 475).

At this juncture, the E. Henry Wemme Company, a corporation, unwilling to abide by the determination made by the federal courts, instituted this suit in the Circuit Court for Multnomah County, Oregon, asking for substantially the same relief that it sought in the federal court. The defendants put in issue the material allegations of the complaint, and pleaded former adjudication resulting from the suits in the state and federal courts. The plaintiff then

comes back and asserts, in effect, that neither the state nor the federal court had jurisdiction, because, it says, the federal court refused to decide the issues, and the plaintiff corporation was not a party to the suit in the state court. We have heretofore referred to the holding of Judge Wolverton that the federal court possessed jurisdiction. Prior to the conclusion of the trial in the federal court, Mr. Veatch, of counsel for defense, moved for a dismissal, and said: "We rest our case upon that motion," and Mr. Wickey, of counsel for plaintiff, replied:

"The jurisdiction of the court has been decided by this court in a well-worded opinion."

Now, as to the holding of the federal court with reference to the decision of this court in the original Wemme will case, note the following from the opinion of Judge Wolverton:

"When the Attorney General of the state was interpleaded and filed his cross-complaint, there were parties plaintiff and defendant, in all respects proper and qualified to carry to final issue and determination the matters in dispute. The Supreme Court of the state, when it rendered its decision interpreting the will of E. Henry Wemme, had under consideration, among others, two matters: One, to ascertain and determine the nature and character of the charity created and bestowed, and the other, to ascertain and declare the present and visitorial authority for administering the trust. The opinion was rendered by Justice Rand, and is searching, exhaustive and able, and we have scrutinized it without avail to find that the court has held that the essence of the trust created by the will was the 'particular White Shield Home.' * * The name, however, is by no means the essence of the charity created. * * This charity, in its interpretation of the will of E. Henry Wemme,

the court upheld, and declared that its establishment and perpetuation were within the mind and purpose of the testator."

The Wolverton opinion then recites the facts relating to the purchase of the site and the construction of a hospital thereon, and its sale to the Salvation Army. Concerning the merits, the court then said:

"The fact that that particular home was disposed of did not destroy the charity instituted by the will of E. Henry Wemme. It was simply a misadventure, which it was the purpose of the court to correct, and which it did correct by reinstatement of the E. Henry Wemme Endowment Fund, with visitorial powers and authority to administer the trust or charity created. * * That charity stands upheld and sustained by the court, and ample provision has been made for its administration as directed by the testator. So the first contention cannot be maintained.

"Nor can the second contention be maintained. Counsel are in error when they assert that, through the action of the state courts and the Attorney General, the fund has been irrevocably cut off from the White Shield Home, if they mean thereby that the fund has been irrevocably cut off from the charity created by the testator. The direct contrary is the case. As has been indicated, we are dealing with an express charity, not with a name by which the hospital shall be known. There exists no good reason why a new hospital may not take the name designated in the will. * * The fund belongs to the charity, and constitutes the means by which it shall be maintained and dispensed."

Continuing, the learned jurist, after quoting from the opinion of this court hereinbefore referred to, said:

"These quotations from the opinion of the court and the mandate indicate unerringly that it is the particular charity about which it treated and adjudicated, and not the particular 'White Shield Home' hospital that was constructed by the E. Henry Wemme Endowment Fund. Nor was the charity diverted by the sale by the churches of the hospital thus constructed.

" * * For present purposes, it is not material whether or not the Alien Property Custodian or E. Henry Wemme Company was a party to the cause heard and determined in the state court, whatever may have been their interest in the controversy. They, or either of them, can recover in any event only under the residuary clause of the E. Henry Wemme will, and this upon the hypothesis that the charity provided for and created by the will is inoperative or has lapsed. · Eventually, when the Attorney General filed his cross-complaint, the state court had before it a cause pending, with proper parties plaintiff and defendant, regardless of whether the E. Henry Wemme Company was made a defendant or not. As previously indicated, the Wemme heirs were not in a position to maintain the suit as residuary legatees under the will, simply because they were not made such. The sole residuary legatee was and is the E. Henry Wemme Company, and it could take only in case the charity failed or lapsed through some cause vital to its present validity. The state court, having regularly a pending and existing cause before it, had jurisdiction to hear and determine the controversy and dispose of all matters relevant thereto. This it did, with the result that the legacy creating the charity and bequeathing a fund for its support and maintenance was declared valid and operative. The state court having jurisdiction of the cause, and the matters involved being within its cognizance, what it did is binding upon this * * court. * * It results, therefore, that I am bound by the state court's findings

and adjudication respecting the charity created by the E. Henry Wemme will, sought to be avoided and set at naught by the heirs of E. Henry Wemme and the churches. But, were I not so bound by that litigation and adjudication, I am, after a careful review of the case and of the opinion of the court and the subsequent proceedings taken in pursuance thereof, fully persuaded that the views announced by the court, and the principles promulgated by which the charity was sustained and upheld and declared valid and operative, are, in all essential respects, sound, and I here and now concur therein. * *

"Against this valid charity, neither of plaintiffs has any interest; nor can they prevail. There has been no lapse of the charity. The testimony of Mr. Ben Selling clears that up. * *

"The conclusions reached render it unnecessary to consider the questions presented as to the authority of the Alien Property Custodian * * , or, as it relates to the E. Henry Wemme Company, in presenting the supposed issue that its property is being taken without due process of law. Both parties are here, and their alleged interests have had ample consideration.

"The complaint will be dismissed and defendants will have a decree against plaintiffs for their costs and disbursements."

We have already stated that the case was affirmed upon appeal to the United States Circuit Court of Appeals, and that the writ of *certiorari* therefrom was denied by the Supreme Court of the United States. From the foregoing language of the court, it plainly appears that the case was heard and determined upon its merits. In concluding the opinion, the court said: "Both parties are here, and their alleged interests have had ample consideration," and thereupon ordered that the bill of complaint be dismissed.

Concerning the jurisdiction of the federal court of the subject matter of this controversy, it is a well-established rule of law that the jurisdiction of the subject matter involved in any litigation in any court must be determined in the first instance by the allegations of the complaint made in good faith, and does not rest on the existence of a sustainable cause of suit, or upon the evidence subsequently adduced. See *Dippold* v. *Cathlamet Timber Co.*, 98 Or. 183 (193 Pac. 909), and authorities there noted, among which are *Eagle Cliff Fishing Co.* v. *McGowan,* 70 Or. 1, 7 (137 Pac. 766), where this court, speaking through Mr. Justice Moore, wrote:

"The authority of a court to hear and determine a cause depends upon the allegations of the initiatory pleading, and not upon the facts."

And, in rendering our decision in the Dippold case, we quoted the following illuminating excerpt from the leading case of *Young* v. *Hamilton,* 135 Ga. 339 (69 S. E. 593, Ann. Cas. 1912A, 144, 31 L. R. A. (N. S.) 1057), decided by the Supreme Court of the State of Georgia:

"The jurisdiction of a court to entertain a cause, and the right of the plaintiff in such cause to finally prevail, present essentially different questions; the former is determined from an inspection of the record, the other results from a consideration of the facts as established by the proof."

See, also, this rule as announced in 17 Stand. Ency. of Proced., p. 660.

The jurisdiction alleged in the complaint filed in the federal court did not rest alone upon the allegations relating to the title of the Alien Property Cus-

todian. In its bill of complaint filed in that court, the plaintiff averred as a ground of jurisdiction that it had been divested of its interest and ownership of the assets of the E. Henry Wemme Endowment Fund provided for by clause 8 of the will, in violation of the Fourteenth Amendment to the Constitution of the United States, and especially to the due process of law clause thereof, "and also in violation of the provisions of the Treaty of Peace with Germany, * * for the reason that the Supreme Court of Oregon rendered a judgment against the said E. Henry Wemme Company, * * in which * * the said E. Henry Wemme Company was held to have no interest in the assets of the E. Henry Wemme Endowment Fund * * ."

It is claimed that the plaintiff in this case was not a party to the litigation in the will case, i. e., *Wemme* v. *First Church of Christ, Scientist,* reported in 110 Or. 179 (219 Pac. 618, 223 Pac. 250). The record does not disclose that the corporation was a party to the litigation in the beginning. It appears from the record that, in that case the alien heirs, as such heirs, were first named parties plaintiff, and that the Christian Science churches were named as parties defendant. Later, the E. Henry Wemme Endowment Fund was made a party defendant, without any order of court therefor. Still later in the course of the litigation, and in the same case, the Attorney General of Oregon was made a party defendant, with no order therefor. Still later, E. Henry Wemme Company, plaintiff herein, was made a party to that suit, without any order authorizing that the company be made a party. See pages 249, 250, transcript of record, United States Circuit Court of Appeals for the Ninth

Circuit, in *Sutherland, Alien Property Custodian,* v. *Selling et al.* From page 251 thereof we take the following:

"Mr. Wickey (of plaintiffs' counsel): Mr. Littlefield was stipulating about there being no order in the circuit court as to the admission of these certain parties in suit in that court; that is, that they did not obtain a rule or order from the court permitting their being admitted as parties. Judge Littlefield made that statement here a minute ago as a stipulation. I say we have no objection that—that there was no order in the state court, the circuit court, admitting these parties as defendants or plaintiffs, or whatever it was.

"The Court: The parties simply appeared without leave?

"Mr. Wickey: They were made parties, and appeared without leave of court, yes.

"The Court: I understand.

"Mr. Wickey: No objection to that. If that is the fact, let it go in."

It is not shown by the record that this plaintiff made any appearance in the suit instituted in the original cause prior to the filing of the findings of fact by the trial judge. It does appear from the title of the cause that it was one of the parties taking the appeal. The plaintiff appears as a party appellant in the appeal bond. It appears as a party on the title pages of the respective briefs filed in the cause. And this court, following the record, which appeared to have been made by the defendant, assumed in its opinion that the plaintiff was a party to the litigation, and declared by its opinion that the plaintiff was the sole residuary legatee under the will construed therein. We have already shown that the plaintiff appears as a party in the mandate issued

out of this court as a result of the litigation. Furthermore, the law presumes that the attorney undertaking to represent the plaintiff was duly authorized so to do. The will shows that the testator bequeathed the stock of the plaintiff corporation to his relatives. All of the plaintiffs named in the original suit were stockholders in this plaintiff corporation, and, under the will, they could have received no beneficial interest from the original suit, other than the resultant interest arising from the enhanced value of the stock of this corporation that would follow from a decree destroying the validity of the charitable trust. Nor could any other person have been benefited by such a decree. The only person, artificial or natural, to derive any benefit from the destruction of this trust was the corporation; and, flowing from its enrichment by reason of such destruction, direct benefit to the plaintiffs, heirs at law of the late E. Henry Wemme, would have followed. However, the control of a corporation is vested by law in the board of directors, and not in the stockholders thereof. As to the appearance of the corporation in the original litigation, the directors of the corporation testified, in effect, that it was made a party to the original litigation wrongfully and without the knowledge or consent of the controlling power of the corporation. As bearing upon this contention, there are many decisions holding that a person who voluntarily joins in an appeal for the purpose of having the case tried *de novo* is bound by the decision of the appellate court, because such an appearance constitutes a voluntary appearance: *Fee* v. *Big Sand Iron Co.*, 13 Ohio St. 563; *Shafer* v. *Hockheimer*, 36 Ohio St. 219; *Mason* v. *Alexander—Ingersoll* v. *Alexander*, 44 Ohio St. 318

(7 N. E. 435); *Gage* v. *Maryatt,* 9 Mont. 265 (23 Pac. 337); *Allen* v. *Bohner,* 54 N. D. 14 (208 N. W. 234). In the early case of *Lyons* v. *Miller,* 2 N. D. 1 (48 N. W. 514), this question was before the court; and, in rendering the opinion for the court, Corliss, C. J., said:

"It is not entirely logical for him to repudiate a jurisdiction he has invoked."

Again, with reference to the same subject, note the following from 2 Stand. Ency. of Proced., pp. 499, 500:

"The great weight of authority is that an appeal constitutes an appearance in the action in which the appeal is taken. * * A distinction is sometimes made that an appeal will amount to an appearance, if, upon appeal, there is a trial *de novo;* otherwise not."

A corporation appears in court by its attorney. But, in order to enter such appearance, the attorney must be clothed with proper authority by the corporation. Again, while it is well established by the decisions that a party is not bound by an unauthorized appearance and may be relieved against a judgment rendered against him on an unauthorized appearance, it is equally well established that the act of an attorney in making an unauthorized appearance for a litigant may be subsequently ratified by such litigant: *United States* v. *Throckmorton,* 98 U. S. 61, 66 (25 L. Ed. 93, see, also, Rose's U. S. Notes); *Robb* v. *Vos,* 155 U. S. 13 (39 L. Ed. 52, 15 Sup. Ct. Rep. 4). In general, the appearance of an attorney is *prima facie* evidence of his authority: *State* v. *Estes,* 34 Or. 196 (51 Pac. 77, 52 Pac. 571, 55 Pac. 25).

In the case of *Wemme* v. *First Church of Christ, Scientist, of Portland,* 110 Or. 179 (219 Pac. 618, 223

Pac. 250), this plaintiff appears to have been represented by the same experienced and able attorney who now represents the plaintiff in the present suit, and who alone signed the complaint. This fact, in itself, is but a slight circumstance; but it gathers strength and force when considered in connection with the other circumstances noted above. On the question of proof of appearance, note the following from 2 Stand. Ency. of Proced., p. 515:

"The general rule is that the appearance must be tried by the record alone. The weight of authority is that the record is conclusive, but there is contrary authority, and the courts often qualify the rule in seeking to avoid injustice."

See, also, authorities under notes 5 and 6.

Therefore, should we follow the harsher rule, we would be compelled to hold that the plaintiff in this case has failed to prove that its appearance in the former case in this court was unauthorized. However, the writer does not believe that, under the showing made in the instant case, we should be compelled to hold that the record concludes the plaintiff. If the corporation voluntarily came into court, it should be held; otherwise not, in the absence of proof of ratification. In any event, the evidence here, to the effect that the corporation did not make a voluntary appearance, leads us to base our decision upon the firm, certain and broad ground that this plaintiff corporation was not a necessary party to the suit for the relief sought by the Attorney General. No vested right of the plaintiff was prejudiced by this court's determination in that suit. True, the court, by its opinion, held that the plaintiff herein was the "sole residuary legatee of the testator." It is not here

complaining about that holding. On the contrary, it is asserting the same thing. However, the issues determined by the court in that suit were issues made only by the Attorney General and the churches, and involved the existence and management of a charitable trust, no part of which had ever vested in this plaintiff.

What is the meaning of "vested," as used in legal parlance? 2 Pope's Legal Definitions defines the term thus:

"Vested. Accrued; fixed; settled; absolute; giving absolute ownership; not contingent; not subject to be defeated by a condition precedent."

4 Words and Phrases (2 ed.), says:

"An estate is 'vested' where there is an immediate right of present enjoyment, or a present fixed right of future enjoyment. * * An estate 'vests' in a person who is given a present and immediate interest, as distinguished from an interest the existence of which depends upon a contingency."

Again: "Vested. Accrued; fixed; settled; absolute; having the character, or giving the rights of absolute ownership; not contingent; not subject to be defeated by a condition precedent." Black's Law Dictionary.

The only vested interest that the plaintiff corporation could possess under the provisions of the will arises by virtue of the residuary clause in that document, and that right accrues only upon the condition that the charity created by the testator becomes inoperative or has lapsed. The charity not having failed or lapsed, but being a lawful, fixed and existing charity, the corporation has not now, nor has it ever had, a vested interest in one dollar of the fund constituting that charity. The plaintiff having

no vested interest in the subject matter of the suit between the Attorney General and the churches, no decree could have been entered for or against it in that suit. The state was entitled to no relief against this plaintiff corporation in that suit, and if this plaintiff, the E. Henry Wemme Company, had been made a party thereto, it must have resulted in a dismissal of the complaint as against it. It is a rule of law that no person need be made a party, against whom, if brought to a hearing, the complainant can have no decree: 15 Ency. of Plead & Prac., pp. 584–590, incl. In the litigation between the Attorney General and the churches this court held that the property therein involved was a donation to charity, and that "the gift was immediate and absolute, and vested the title to the property in the trustees as soon as the will took effect." We are not prepared to recede from that holding. The corporation known as the E. Henry Wemme Endowment Fund, a charitable corporation, was organized by the express direction contained in the will, for the purpose of handling, managing, improving and mortgaging, certain real property "heretofore devised to my trustees for the purpose of conducting a maternity home or lying-in hospital for unfortunate or wayward girls." That such an hospital, conducted for such an object, constitutes a public charity, is beyond question.

For a comprehensive and analytical statement defining the term "charity," see opinion of Gray, J., in *Jackson* v. *Phillips,* 14 Allen (Mass.), 539, 556.

In the determination of this cause, the writer has kept in mind this principle: That a deliberate gift to charity by a testator possessing testamentary capacity is a favorite of equity: 2 Commentaries on Wills,

Alexander, § 1142.   See, also, 3 The American Law
of Administration (3 ed.), Woerner, § 429, where the
author says:

"Testamentary gifts to charitable uses are dis-
tinguishable from other testamentary dispositions in
several particulars, owing to the high favor with
which the law regards them, and which demands
their most liberal construction with the view of ac-
complishing the intent and purpose of the donor;
and this to an extent which will uphold and carry
into effect trusts to charitable uses which cannot be
upheld in ordinary cases."

In the litigation between the Attorney General
and the churches, this court decided that the will
of E. Henry Wemme created a valid public charity;
and we now add that that decision, whether right or
wrong, is a conclusive adjudication. Two eminent
federal judges have written opinions in which they
declare that the holding of this court in the opinion
written by Mr. Justice RAND was not only binding
upon the federal courts, but, further, that the deci-
sion was right. In addition, as appears from the
quoted opinion of Judge WOLVERTON, the federal
court, with the parties to this litigation before it,
and upon proper pleadings, likewise held that the
charity created by Wemme had not failed or lapsed.
And, after a careful review of the testimony of rec-
ord, we can find no valid reason, assigned by counsel
or otherwise, for holding to the contrary. In the
State of Oregon, a sane man free from restraint
may will his property to any public charity he may
choose; and it does not lie within the power of any
residuary legatee or heir at law to defeat his bene-
factor's will by asserting that the public is served by
a sufficiency of hospitals. It was E. Henry Wemme's
lawful right to make his own will, and to select

the objects of his bounty. He was bequeathing his own property; and, so long as he kept within the law, it was his right to dispose of his fortune as he chose. The delays in the construction of another hospital are excusable. The testimony of Honorable Ben Selling, a well-known Portland business man and philanthropist, and chairman of the board of trustees of the Endowment Fund, is to the effect that, in due time, a hospital will be erected and operated as contemplated by the testator's will. When we reflect upon the manner in which the trustees have been harassed by litigation, it is not difficult to understand why the present trustees, who are at all times under the control of the court, have not acquired a site and constructed a building thereon. As this court has previously determined, the paramount purpose of E. Henry Wemme, by his will, was to found and to maintain a lying-in hospital for poor, unfortunate and wayward girls. The fact that the hospital designated as the White Shield Home was sold does not defeat the carrying forward of the outstanding intention of E. Henry Wemme as expressed in his will. The representatives of the Salvation Army are not bound to continue to operate that hospital. The fund involved belongs to charity, and not to the White Shield Home. The sale and disposal of that particular property did not destroy the public charity created by the will. The E. Henry Wemme Endowment Fund holds a valid title to the property involved in this suit, for the express purpose of founding and maintaining a lying-in hospital for unfortunate and wayward girls. It follows that the charitable purpose of E. Henry Wemme as a benefactor to unfortunate humanity should be carried forward in

accordance with his will, as heretofore construed by this court.

If it be true, as contended by my learned and able associate, that that portion of the will that authorizes the churches to expend the rents, issues and profits and all the proceeds of the E. Henry Wemme Endowment Fund in such a manner "as to create the greatest relief for the greatest number of suffering humanity," is inoperative and void, this does not destroy or render null and void the testator's definite gift to charity; for, as written by Judge WOLVERTON, when this same matter was pending before the federal court:

" 'It is a settled rule of construction,' as held by the court in *Oxley* v. *Lane,* 35 N. Y. 340, 349, 'that if effect cannot, consistently with the rules of law, be given to the entire will, or an entire provision in a will, any part of it may be sustained which is conformable to the rules of law and which can be separated from the residue without doing violence to the testator's general intention.' "

We are not predicating our determination of this cause upon the ground that the case of *Wemme* v. *First Church of Christ, Scientist,* 110 Or. 179 (219 Pac. 618), constitutes a former adjudication of the plaintiff's rights asserted herein. We are not deciding the case upon the principle of *res adjudicata.* We have quoted much from the opinion of Judge WOLVERTON because of its application to this cause, and because of the learning embraced therein. We are assuming herein that the plaintiff was not a voluntary party to that suit, and therefore no vested right could have been severed as a result of such suit. We do not say, however, that, in a suit brought for the purpose of construing the will, and with the

necessary and proper parties thereto, it was held that the will of E. Henry Wemme created a definite, existing, public charity. By that construction the court interpreted the definite intention of the testator, as expressed in his will, to be the creation of a charitable trust, and, by its order, directed the removal of the then board of trustees of that trust and the appointment of other trustees in their stead. The same will, made by the same testator, involving the same charitable trust, is now before us, and we are governed by the same rules of construction. The law that was effective then is now the law. If the property involved therein constituted a definite charitable trust in the former suit, it is now a definite charitable trust. Reading the record that is before us in the light of the former suit, we must at least recognize as a valid precedent the determination there made. The purpose that guided the heart and brain of E. Henry Wemme when he made the will is the same benevolent and charitable purpose, whether determined by this court from the former, or from the instant, suit. We repeat that the definite aim that animated the being of E. Henry Wemme was the creation of a charitable trust for the benefit of unfortunate and wayward girls; and that trust has not lapsed, but shall continue throughout the generations yet to be.

The decree of the trial court will be affirmed.

AFFIRMED.

BEAN, COSHOW and ROSSMAN, JJ., concur in the result.

BELT, J., did not sit.

RAND, C. J., took no part in the determination of this cause.

McBRIDE, J., Dissenting.—This is an action wherein the plaintiff, E. Henry Wemme Company, an Oregon corporation, asks that a resulting trust be declared in its favor for property held by the defendant, E. Henry Wemme Endowment Fund, a charitable organization, also incorporated under the laws of the State of Oregon. The plaintiff is named the residuary legatee in the will of E. Henry Wemme, deceased, who died in January, 1914, and the property sought to be recovered by plaintiff was acquired through the provisions of clause 6 of the will of said decedent. The will, containing clause 6, is as follows:

"(1) I give, devise and bequeath unto H. A. Weis, Jessie M. Carson and J. J. Cole and their successors, lots one (1), four (4), five (5), and eight (8), in block fifty-three (53), in Couch's Addition to the city of Portland, and also lots one (1) and four (4), and the south twenty (20) feet of lot five (5) in block nine (9) of Couch's Addition to the city of Portland, and the south one hundred and twenty (120) feet of block seventy-two (72) in East Portland, now a part of Portland, and all now being in the city of Portland, Multnomah County, State of Oregon, to be held in trust, however, by said H. A. Weis, Jessie M. Carlson and J. J. Cole, their successors for the uses and purposes hereinafter set forth as follows: Said trustees and their successors shall have power and authority to hold, manage, improve, repair or lease said property or any part thereof without any other authorization than that hereby given, and shall collect all rents, issues and profits arising from said property, and shall from such rents, issues and profits, first pay all taxes, assessments and charges for whatsoever kind or nature lawfully made against said property, or any part thereof.

"(2) My said trustees shall immediately after my death cause to be formed a corporation under

the name of 'E. Henry Wemme Endowment Fund,' under and by virtue of the laws of the State of Oregon, providing that the duration of said corporation shall be perpetual, that its principal office and place of business shall be in the city of Portland, County of Multnomah and State of Oregon, with a capital stock to be determined by my trustees, not to exceed, however, the reasonable value of the property hereinbefore devised to my trustees at the time of such incorporation, and incorporated for the purpose of buying, owning, holding, managing, improving, mortgaging and leasing the real property hereinbefore devised to my trustees, and for the purpose of conducting a maternity home or lying-in hospital for unfortunate or wayward girls in the city of Portland, Multnomah County and State of Oregon.

"(3) My said trustees shall jointly subscribe for all the capital stock of said corporation, and shall thereupon complete the organization and cause such action to be taken by it that it shall purchase of my said trustees all of said property hereinbefore devised to my trustees and in payment therefor issue its capital stock to my said trustees, jointly, and thereupon said trustees shall by good and sufficient conveyance or conveyances grant, bargain, sell and convey to said E. Henry Wemme Endowment Fund, a corporation, all the real property hereinbefore devised to said trustees, and thereupon the capital stock of said corporation of E. Henry Wemme Endowment Fund shall be issued to said trustees jointly in one certificate which capital stock witnessed by said certificate shall be held in trust by said trustees and disposed of by them as hereinafter directed.

"(4) Immediately upon the completion of the organization of said E. Henry Wemme Endowment Fund, and the transfer to said corporation last mentioned of the property herein devised to my trustees, then and thereupon said corporation shall have the right to borrow a sum of money not to exceed

Seventy Five Thousand and no/100 ($75,000.00) Dollars, upon the promissory note of said corporation, and to secure the payment of such promissory note by mortgage executed by it covering lots one (1) and four (4) and the south twenty (20) feet of lots five (5), in block nine (9) of Couch's Addition to the city of Portland, in Multnomah County, State of Oregon, said promissory note and mortgage shall contain such provisions and conditions as may be determined and agreed upon by said corporation and the person, firm or corporation from whom it may secure such loan.

"(5) After securing money on the mortgage hereinbefore provided to be executed by it said E. Henry Wemme Endowment Fund shall proceed to purchase suitable real estate as a site for a maternity home for unfortunate and wayward girls, and shall construct thereon a suitable home for the reception, accommodation, care, treatment and comfort of unfortunate and wayward girls who may be in need thereof, and shall furnish, equip and maintain such maternity home without cost or charge to the inmates thereof, but shall use the rents, issues and profits arising and issuing out of the property owned by said E. Henry Wemme Endowment Fund, in maintaining, furnishing and equipping said maternity home, and in caring for and providing for the inmates thereof, making a provision, however, should the said corporation deem it necessary for a sinking fund from such rents, issues and profits, to pay out thereof, when it shall have become due, said note given by the corporation as hereinbefore provided. Said maternity home shall be known as the White Shield Home of Portland, Oregon, and the inmates shall be admitted thereto irrespective of religion or nationality.

"(6) Said corporation by and through my said trustees who shall constitute the board of directors thereof, shall after the construction of said home, open and thereafter conduct the same for the accommodation, care and keeping of unfortunate and way-

ward girls as a lying-in hospital without charge therefor.

"(7) In case of the death, resignation or permanent inability of any or either of my said trustees to act as such trustee or trustees, then and in that event the successor or successors of my trustees shall have the right and shall name and appoint the successor or successors of my trustees who may die, resign or be permanently disabled from the performance of the duties as my trustee hereunder, and such successor shall have the right in the same way to appoint their successors and so it shall continue, and a majority of the trustees shall have the right to exercise full power and authority under and by virtue of the provisions of this my last will and testament.

"(8) Upon the expiration of three years from and after my death, I direct that my trustees transfer to the different churches of the Church of Christ, Scientist of Portland, Oregon, authorized and chartered by the head Church of Christ Science known as the Mother Church of Boston, Massachusetts, all the capital stock of said E. Henry Wemme Endowment Fund, in equal parts, to be theirs forever, for their own respective uses and benefit and without any charge or trust reserved to my estate of whatsoever kind or nature, and thereupon my trustees and their successors shall be considered as having completed their duties herein and discharged.

"(9) I hope, however, this is not directory, but merely a suggestion that the maternity home constructed as hereinbefore provided shall be continued by said corporation E. Henry Wemme Endowment Fund, perpetually and forever, but I do not make this binding upon said Church of Christ Science, or upon said E. Henry Wemme Endowment Fund, a corporation for the reason that I have implicit faith and confidence in the Church of Christ Science, and believe that they will be perpetual, and I realize the inability of one now living to determine what in the future might be the greatest need and benefit to suffering humanity, and therefore I have given abso-

lutely and without reservation all of the stock of said corporation of said E. Henry Wemme Endowment Fund to said Church of Christ Science believing that they will expend the rents, issues and profits and all the proceeds of the said E. Henry Wemme Endowment Fund in a manner so as to create the greatest relief for the greatest number of suffering humanity.''

It appears from the record of this and other cases, involving the same property, which have been before this court, that the provisions of clause 6 just quoted, relating to the construction of a maternity home, were carried out, and that the home so built was operated by the trustees named in the will until April, 1919, when all the capital stock of the Endowment Fund was transferred to the six Churches of Christ, Scientist, of Portland, in equal parts, and the control of the Endowment Fund and the White Shield Home passed to the churches. On or about July 1, 1919, or within three months after the churches were given control of the Endowment Fund and the White Shield Home, they closed the home and ceased to operate it for the purpose intended, and in February, 1920, the churches sold the home to the Salvation Army for a reported consideration of $80,000, which the churches proceeded to expend in the purchase and improvement of land in the neighborhood of Neff, Clackamas County, Oregon, for a benevolent purpose more in keeping with their religious tenets than was the conducting of a maternity home for fallen women in Portland.

The record shows that in 1919, after the United States entered the World War, the Alien Property Custodian seized 92 per cent of the capital stock of the E. Henry Wemme Company, the plaintiff in the present suit, said stock being owned by designated

123 Or.—28

alien enemies under the war powers of the government, and, because of such seizure, said corporation remained under control of the said custodian until a short time prior to the bringing of the present action.

In August, 1922, five relatives and heirs of E. Henry Wemme, deceased, all of them citizens of Germany, filed a suit in the Circuit Court of Multnomah County making the six Churches of Christ, Scientist, of Portland, parties defendant, by which suit they, as the legal heirs of E. Henry Wemme, deceased, sought to recover the property described in clause 6, hereinbefore quoted, on the ground that the churches had disposed of the White Shield Home and were appropriating the property left them in trust by E. Henry Wemme to their own use.

An amended complaint was filed in which the Attorney General of the State of Oregon was made a party defendant. The Attorney General claimed a trust was established by the will, and the heirs, as plaintiffs, waived their rights and joined the plea of the Attorney General. Upon the issues joined between the parties to that suit, the Circuit Court of Multnomah County held that the property belonged to the churches under the terms of the will. An appeal was had to this court, the result being a reversal of the decision of the Circuit Court, reported in *Wemme* v. *First Church of Christ, etc.,* 110 Or. 179 (219 Pac. 618, 223 Pac. 250). This decision is referred to and discussed later.

In 1925, the Alien Property Custodian of the United States filed an action as plaintiff in his official capacity, making the E. Henry Wemme Endowment Fund and its trustees parties defendants, and the plaintiff herein a party plaintiff, in which action, he, as such

custodian, sought to recover the property in litigation in the present suit, on the ground of a lapsed devise. The decision in this case, *Sutherland* v. *Selling,* 16 Fed. (2d) 865, and its effect on the present case is also discussed later.

For various reasons, during the extended litigation, the present trustees of the E. Henry Wemme Endowment Fund are in control of the fund and its assets with no charity to maintain and nothing to do but administer the assets and receive the income. If the plaintiff prevails in this action as residuary legatee, it will be an end to the Endowment Fund as such. If the defense is successful, the trustees of the fund announce their intention of building another maternity home in Portland for unmarried expectant mothers.

The defendants, as a principal defense in this suit and by way of answer, set up the decision of this court in *Wemme* v. *First Church of Christ, etc.,* 110 Or. 179 (219 Pac. 618, 223 Pac. 250), and the decision of the federal court in *Sutherland* v. *Selling,* 16 Fed. Rep. (2d) 865, as *res judicata* against the plaintiff, and further raise the question of estoppel in that plaintiff, having invoked the jurisdiction of the federal court, is estopped from denying such jurisdiction.

At the moment E. Henry Wemme died, the E. Henry Wemme Company, plaintiff herein, became seised, as residuary legatee named in the will of the deceased, of a vested right as such residuary legatee, and such right could not be adjudicated, or limited, or taken away in any proceeding to which it was not legally a party.

In the case of *Wemme* v. *First Church of Christ, etc.,* 110 Or. 179 (219 Pac. 618, 223 Pac. 250), the will

of E. Henry Wemme was in evidence and disclosed that the E. Henry Wemme Company was an indispensable party in any proceeding in which the validity of the will or the rights of said residuary legatee was an issue, and should be made a party; and the only reason for not doing so in that suit seems to be that the validity of clause 6 was not raised, all parties to that litigation being satisfied to have the interpretation of the court as to whether or not a trust had been created by the provisions of said clause. Only parties to a litigation are bound by the decision of the court and such parties are those named in the pleadings whose rights are set out to be adjudicated. An examination of the judgment-roll in the case stated shows that the name of E. Henry Wemme Company does not appear in the pleadings and its rights were not set forth therein, or adjudicated by the Circuit Court of Multnomah County, or by this court. In the opinion of the Circuit Court by Mr. Justice Belt, then sitting in that court, it was said in conclusion:

"In view of these conclusions it follows that the suit of the plaintiff heirs and the cross complaint of the attorney general are dismissed and that each party pay their own costs and disbursements."

The name of the E. Henry Wemme Company appears for the first time in the caption of the findings of fact after trial and decision in the Circuit Court: *Southern Pine Lumber Co.* v. *Ward,* 16 Okl. 131 (85 Pac. 459); *Reed* v. *Hollister,* 106 Or. 407 (212 Pac. 367).

In *Jackson* v. *Ashton,* 8 Pet. (U. S.) 148 (8 L. Ed. 898, see, also, Rose's U. S. Notes), Mr. Chief Justice Marshall said:

"The title or caption of the bill is no part of the bill, and does not remove the objection to the defects in the pleading."

It is a principle of law that persons not parties to a proceeding are not bound by the findings and judgment therein, and their rights cannot be determined in their absence. It therefore follows that the proceedings and judgments heretofore had and rendered in the state courts, involving the property in question in the present suit, cannot be held to be *res judicata* against the plaintiff in this action. See *Beasley* v. *Shively*, 20 Or. 508 (26 Pac. 846); *Handley* v. *Jackson*, 31 Or. 552 (50 Pac. 915, 65 Am. St. Rep. 839); *Haney* v. *Neace-Stark Co.*, 109 Or. 93 (216 Pac. 757, 219 Pac. 190).

The case in the federal court presents a different situation. As has been stated, the plaintiff corporation was under the control of the Alien Property Custodian from 1919 until a short time prior to the bringing of the present action, and was therefore under his control when the case of *Sutherland* v. *Selling*, 16 Fed. (2d) 865, referred to, was started in the United States District Court for the District of Oregon, and was brought under his direction. The custodian and the corporation were joined as plaintiffs. The gravamen of that action seems to have rested on the belief that the decision of this court in *Wemme* v. *First Church of Christ, etc., supra,* deprived the plaintiff corporation herein of its property without due process of law in contravention of the provisions of the Fourteenth Amendment to the federal Constitution, and the federal court was asked to set aside the judgment of this court. There was no diversity of citizenship and no power in the federal court of

original jurisdiction to set aside the state judgment: *Hewitt* v. *Hewitt,* 17 Fed. (2d) 716; *Shanks* v. *Banting Mfg. Co.,* 9 Fed. (2d) 116; *Graham* v. *Boston,* 118 U. S. 167 (30 L. Ed. 196, 6 Sup. Ct. Rep. 1009, see, also, Rose's U. S. Notes).

The late learned Judge Wolverton tried the case in the federal court and in his decision said:

"The matter was one wholly of local concern, and unless there was diversity of citizenship or a federal question involved, the federal court could have no jurisdiction in the premises, and then only when the jurisdiction was regularly sought by a. competent party. It results therefore that I am bound by the state court's findings and adjudication."

Judge Wolverton made no attempt to decide the rights of the plaintiff herein as a residuary legatee under clause 6 of the will in controversy. When he said "the matter was one wholly of local concern" he no doubt meant either the issue between the Attorney General and the churches, or the power to set aside the judgment of this court, and could not have referred to the general construction of wills, as the learned judge knew that the construction of wills was controlled by well-known rules of law, universally applied, and could be applied by federal courts in cases in which they had jurisdiction by reason of diversity of citizenship or a federal question involved: *Barber* v. *Pittsburgh & C. Ry.,* 166 U. S. 83 (41 L. Ed. 925, 17 Sup. Ct. Rep. 488).

Judge Wolverton no doubt felt, and properly so, that the rights of the plaintiff herein must of necessity first be passed upon by the courts of this state. He was bound by the decision of this court already rendered, not because of what was decided, but for

the reason that he had no authority or power to set
it aside, as only in cases of diversity of citizenship
could he interfere with the decision of state courts,
and then only by enjoining their enforcement, and
not by setting aside the judgment as prayed for by
plaintiffs in that action: *Hewitt* v. *Hewitt,* 17 Fed.
(2d) 716.

If the plaintiff herein felt itself injured by the
previous decision of the courts of this state as it
alleges in its bill in the present action, it had the
right, and it was its duty to first seek relief in the
state courts, as it now does, and if this, the highest
court in the state, refuses the right of adjudication
according to the law of the land, then resort might be
had to the United States Supreme Court under the
Fourteenth Amendment to the federal Constitution.
The rights of a litigant, under these circumstances,
are fully discussed and determined in *Shanks* v. *Banting Mfg. Co.,* 9 Fed. (2d) 116.

Judge WOLVERTON rendered no decision on the
merits of the case as presented by the pleadings, and
clearly stated he had no jurisdiction or power so
to do. His comment on the decision of this court is
in no way binding upon this court or the litigants,
for if, as he said, he was bound by the decision of
this court, no matter how he was bound and had no
jurisdiction to try the case on its merits, then his
jurisdiction was limited to a dismissal of the case:
*Murray* v. *City of Pocatello,* 226 U. S. 318 (57 L. Ed.
239, 33 Sup. Ct. Rep. 107).

An appeal was taken by the plaintiffs from the
decision of Judge WOLVERTON to the United States
Circuit Court of Appeals, Ninth District, and in an
opinion by the Honorable Judge RUDKIN of that court

in the case of *Sutherland* v. *Selling, supra,* Judge Wolverton was sustained and the appeal dismissed. Judge Rudkin was even more positive in his statements regarding jurisdiction than was Judge Wolverton. Judge Rudkin held that all parties, being citizens of the State of Oregon, except the Alien Property Custodian, who only possessed the rights of a stockholder and could not maintain the action as officer of the government, and no federal question being involved, the court was without jurisdiction. The following is a quotation from the decision:

"This is but another illustration of attempts so often made to circumvent the judgments and decrees of state courts of competent jurisdiction by appealing to the federal courts on some fancied constitutional ground."

And later in the opinion Judge Rudkin said:

"The rights of the alien property custodian are not superior to the rights of the corporation whose stock he seized, or to the rights of other stockholders. The custodian did not seize the property of the endowment fund, and had no right to seize it. He seized only the stock of alien enemies in a private corporation, and that seizure vested in him the rights of a stockholder and nothing more. Such rights, under ordinary circumstances, must be enforced through the medium of the corporation, and the rights of the custodian as a stockholder forms no exception to the general rule."

Where a court is without jurisdiction, or is unable to give the relief prayed for, its acts and proceedings beyond a dismissal can be of no force and validity. This question has been passed upon by this court in *Haney* v. *Neace-Stark Co.,* 109 Or. 93 (216 Pac. 757,

219 Pac. 190). At page 123 of the opinion Mr. Justice Brown said:

"In the instant case, the court made no determination of the issue in question. The court expressly said so, and its declaration is of record and has been received in evidence by the offer of the defendant, for the purpose of proving its plea of former adjudication. The defendant made the record. It is incumbent upon him who would avail himself of the defense of former adjudication to establish it. The evidence that has been offered and received into the record not only fails to prove that the matter at issue was adjudicated in the former hearing but conclusively establishes that the court made no determination of the vital issue above noted."

See *Swift* v. *McPherson,* 232 U. S. 51 (58 L. Ed. 499, 34 Sup. Ct. Rep. 239), and *Murray* v. *City of Pocatello,* 226 U. S. 318 (57 L. Ed. 239, 33 Sup. Ct. Rep. 107).

I cannot see that the federal court in *Sutherland* v. *Selling, supra,* decided anything beyond the question that it had no jurisdiction or power to determine the case upon its merits or set aside the state judgment, as there was no diversity of citizenship, and the federal officer who was a party plaintiff and seeking the jurisdiction of the federal court as such officer had no right to maintain the action, as he was limited to the rights of a stockholder and therefore the federal court was bound by the decision of this court. See 25 C. J., 694.

Defendants contend that the plaintiff having invoked the jurisdiction of the federal court is estopped from denying or challenging such jurisdiction. I do not think the point well taken, at least, when the courts held, as they did, that they had no jurisdiction

to decide the case on its merits, but were bound by a decision of the state court, and made no attempt to pass upon and either grant or deny the relief prayed for by plaintiff in its bill. Estoppel can only lie where relief is sought in a proper manner of a court which has jurisdiction and power to grant the particular relief prayed for, and then only to the extent that relief is granted or denied. Estoppel cannot extend beyond questions passed upon by the court that are within the issues presented by the pleadings, which were within the jurisdiction and power of the court to decide: *Goodnough Merc. Co.* v. *Galloway,* 48 Or. 239 (84 Pac. 1049).

Counsel for defendants lay great stress on *Dowell* v. *Applegate,* 152 U. S. 327 (38 L. Ed. 463, 14 Sup. Ct. Rep. 611, see, also, Rose's U. S. Notes), in support of their plea of *res judicata* and estoppel, but counsel evidently fails to recognize that in this case the court held that it had jurisdiction to decide the case on its merits as the rights of the government under a federal statute were involved thus clearly distinguishing this case from *Sutherland* v. *Selling, supra.*

I feel fully justified, by the facts and the law as stated, and cases cited in support thereof, in holding, as I do, that the plea by defendants of *res judicata* and estoppel is not well taken, and that plaintiff is entitled to have its rights as residuary legatee determined, which involves the construction of clause 6 of the will of E. Henry Wemme, deceased, which clause has already been set out in full.

This brings us to a consideration of the case on its merits, and I will first take up the contention of plaintiff that clause 6 of the will is void. This is

a question that has never been decided by this or any other court in this state, and the question was expressly left open in *Wemme* v. *First Church of Christ, Scientist,* 110 Or. 179, 211 (219 Pac. 618, 223 Pac. 250), when Mr. Justice RAND used this expressive language:

"Whether the purposes of the testator in providing for the substitution of some other form of charity, which, at some future age, may be of greater benefit to a greater number of suffering humanity, are void because so vague and uncertain, or whether morality will ever so universally prevail that it will render this particular form of charity unnecessary, are matters with which we are not now concerned."

In the same case in 115 Or. 281 (237 Pac. 674), Mr. Justice COSHOW said: "The will of Mr. Wemme is ambiguous." In that decision this court only refused to set aside the sale of the White Shield Home, without passing upon the question as to what effect the disposition of the particular charity had upon the trust, if any, or the validity of clause 6. A reading of the previous decisions of this court, with relation to this trust, indicates clearly that no attempt was made to pass upon the validity of the clause, and the question is now raised for the first time and by the indispensable party who has the right to raise it.

Courts have no power to make wills or change them to meet unexpected emergencies. The function of the court is to interpret the will as written according to the words therein contained. The intention of the testator is to be obtained from the words used, and all of the words of the will must be considered and given their ordinary and usual meaning in arriving at the proper construction.

Mr. Justice Brown in *Boots et al.* v. *Knox et al.,* 107 Or. 96, 98 (212 Pac. 469, 213 Pac. 1013), said:

"The statute of this state requires the court to obey the directions of the will and to carry out the true intent and meaning of the testator as therein expressed. * * No court can make a will by construction or interpretation."

And in *Re Wilson's Estate,* 85 Or. 604 (167 Pac. 580), Mr. Justice Bean, at page 614, said:

"As we enter upon the duty imposed, the weight of the responsibility seems lessened when we remember that the court cannot change one 'jot or tittle' of the law. It is for us simply to expound it as we find it made for us and the other members of society. Crystallized for the majority it perhaps in some instances resembles ready made clothing which does not always appear to fit exactly. In other words, the court cannot revise or make a will for the decedent. It is the function of the court to construe the one made by him and declare its effect."

See, also, *Hunter* v. *Attorney General,* [1899] App. Cas. (Eng.) 309; *Herzog* v. *Title Guaranty & Trust Co.,* 177 N. Y. 86 (69 N. E. 283, 67 L. R. A. 146).

Unless the Wemme Trust, as created in clause 6, constitutes a legal charity, it is void.

In *Morice* v. *Bishop of Durham,* 9 Ves. Jr. (Eng.) 399, there was a bequest to the Bishop of Durham for such objects of benevolence and liberality as he in his own discretion should select. Sir William Grant said:

"Then is this a trust for charity? Do purposes of liberality and benevolence mean the same as objects of charity? That word in its widest sense denotes all the good affections, men ought to bear towards each other; in its most restricted and common sense,

relief of the poor.  In neither of these senses is it employed in this court.  Here its signification is derived chiefly from the Statute of Elizabeth.  Those purposes are considered charitable, which that statute enumerates, or which by analogies are deemed within its spirit and intendment; and to some such purpose every bequest to charity generally shall be applied.  But it is clear liberality and benevolence can find numberless objects, not included in that statute in the largest construction of it."  The trust was held void.

Judge STORY in 3 Eq. Juris. (14th ed.), Section 1539, said:

"But, however extensive the jurisdiction may originally have been over the subject of charities, and however large its application, it is very certain that since the statute of Elizabeth, no bequests are deemed within the authority of chancery, and capable of being established and regulated thereby, except for those purposes which that statute enumerates as charitable or which by analogy are deemed within its spirit and intendment."

Oregon takes its law of charitable uses from the mediaeval equitable jurisdiction dealing with the subject antedating the reign of Elizabeth.  But regardless of its origin, the definition of a legal charity in Oregon, as well as elsewhere, is found within the scope of the statute of 43d of Elizabeth: *Pennoyer* v. *Wadhams,* 20 Or. 274 (25 Pac. 720, 11 L. R. A. 210); *In re John's Will,* 30 Or. 494 (47 Pac. 341, 36 L. R. A. 242); *Vidal* v. *Girard,* 2 How. (U. S.) 127 (11 L. Ed. 205).

A legal charity is therefore a gift to a class of indefinite beneficiaries coming within the scope of any of the objects enumerated in the statute of 43d of Elizabeth: *Morice* v. *Bishop of Durham,* 9 Ves. Jr.

(Eng.) 399, 10 Ves. Jr. (Eng.) 522; Perry on Trusts, section 696; *Verge* v. *Sommerville*, [1924] App. Cas. (Eng.) 496; *In re MacDuff*, [1896] 2 Ch. (Eng.) 451. These objects have been divided into four classes: (1) Trusts for the relief of poverty; (2) trusts for the advancement of education; (3) trusts for the advancement of religion; and (4), the class of trusts beneficial to the community mentioned in the statute. Definitions based on these classifications are found in *Jackson* v. *Phillips*, 14 Allen (Mass.), 539; *Pennoyer* v. *Wadhams*, 20 Or. 274 (25 Pac. 720, 11 L. R. A. 210); *In re Tetley*, [1923] 1 Ch. Div. 258; *Commissioners for Special Purposes of Income Tax* v. *Pemsel*, [1891] App. Cas. 531, 583.

It. follows that, if Wemme had left his fund solely for founding a refuge home, the gift would be good as coming within the scope of the statute of 43d of Elizabeth. But he went much further than this and created in the Christian Science churches an exclusive power to continue the home in their sole discretion, or abandon it and devote the income of the Endowment Fund to suffering humanity.

Wemme planned an incorporated endowment fund which should be in the exclusive control of the Christian Science churches for such beneficiaries as they might choose with no limit except the confines of suffering humanity. The operation of the White Shield Home was merely a suggestion. Wemme did not choose to bind the churches to operate the White Shield Home, as he wished to leave them free to accomplish his larger purpose, namely, the uplift of suffering humanity. Clause 9 contains an explicit statement of the reasons which actuated Wemme in giving the churches the power to change the Endow-

ment Fund from the support of the White Shield home to the support of suffering humanity. He said:

"I do not make this (operation of the White Shield Home) binding upon said Church of Christ Science, or upon said E. Henry Wemme Endowment Fund, a corporation, for the reason that I have implicit faith and confidence in the Church of Christ Science, and believe that they will be perpetual, and I realize the inability of one now living to determine what in the future might be the greatest need and benefit to suffering humanity."

In other words, he has such confidence in the churches that he gave them entire freedom to expend the fund for the support of the White Shield Home, or for some other purpose of their own choosing. And so Wemme, concluding clause 9, says:

"And therefore I have given absolutely and without reservation all of the stock of said corporation of said E. Henry Wemme Endowment Fund to said Church of Christ Science believing that they will expend the rents, issues and profits and all the proceeds of the said E. Henry Wemme Endowment Fund in the manner so as to create the greatest relief for the greatest number of suffering humanity."

This alternative power created a benevolent trust which is void. The churches, under this power, could devote the entire income to an object noncharitable in its nature.

In order to constitute a legal charitable trust, the trustee must be compelled, by the will, to devote the entire fund to charity; and an alternative power to devote the fund to purposes noncharitable is fatal to the validity of the trust.

In Volume 4, Laws of England, page 146, Section 230, the Earl of HALSBURY says:

"To constitute a good and charitable gift the application of the funds for charitable purposes must be obligatory. If the trustees are allowed an alternative as to whether the purposes to which they apply the subject matter of the gift are to be charitable or something else, the trust cannot be maintained."

And the same principle is illustrated by Lord Elden in *Morice* v. *Bishop of Durham,* 10 Ves. Jr. (Eng.) 521, 541, where he said:

"But the true question is, whether, if upon the one hand he might have devoted the whole to purposes, in this sense charitable, he might not equally according to the intention have devoted the whole to purposes benevolent and liberal, and yet not within the meaning of charitable purposes, as this court construes those words; and if according to the intention it was competent for him to do so, I do not apprehend, that under any authority upon such words the court could have charged him with maladministration, if he had applied the whole to purposes, which according to the meaning of the testator are benevolent and liberal; though not acts of that species of benevolence and liberality, which this court in the construction of a will calls charitable acts."

And so the rule is well settled that where a testator creates a discretion in a trustee to devote the entire fund to charitable or noncharitable purposes, the gift is void.

In *Nichols* v. *Allen,* 130 Mass. 211 (39 Am. Rep. 445), the bequest was to trustees to distribute the fund "to such persons, societies or institutions as they may consider most deserving." Chief Justice Gray, with relation to this gift, said:

"A trust which by its terms may be applied to objects which are not charitable in the legal sense, and to persons not defined, by name or class, is too indefinite to be carried out."

In *Attorney General* v. *National Provincial and Union Bank,* [1924] App. Cas. (Eng.) 262, the following bequest was held void:

"For such patriotic purposes or objects and such charitable institution or institutions, or charitable object or objects in the British Empire as my trustees may in their absolute discretion select in such shares and proportions as they shall think proper."

In *Ellis* v. *Selby,* 1 M. & C. (Eng.) 286, Lord Chancellor Cottenham held the following bequest void:

"For such charitable or other purposes as they, my said trustees and the survivor or survivors of them, his executors or administrators, shall think fit without being accountable to any person or persons whatsoever for such disposition thereof."

In *Tilden* v. *Green,* 130 N. Y. 29 (28 N. E. 880, 27 Am. St. Rep. 487, 14 L. R. A. 33), the testator created a trust giving his trustees full power to devote the entire fund to the Tilden Trust for the purpose of establishing and maintaining a free reading-room, or in the alternative; "to such charitable educational and scientific purposes as in the judgment of my said executors and trustees will render the rest, residue and remainder of my property most widely and substantially beneficial to the interest of mankind."

In holding this trust void, the court said:

"If the Tilden Trust was but one of the beneficiaries which the trustees may select as an object of the testator's bounty, then it is clear and conceded by the appellants that the power conferred by the will upon the executors is void for indefiniteness and uncertainty in object and purpose. * *

"It is only in case that the executors deem it expedient so to do that they are to convey the whole or any part of the residue to the Tilden Trust. Whether that corporation should take anything rested

wholly in the discretion of the executors. * * The validity of the power depended upon its nature, not its execution." See *Holland* v. *Alcock,* 108 N. Y. 312 (16 N. E. 305, 2 Am. St. Rep. 420).

In *Re Johnson's Estate,* 100 Or. 142, 158 (196 Pac. 385), Mr. Justice Bean said:

"The purported trust is not defined, by the instrument probated to be a charitable one. Benevolency is a much broader term than charity and embraces objects and purposes which are not charitable. The will cannot be sustained as creating a public charity."

In *John* v. *Smith,* 91 Fed. 827, 829, Judge Bellinger, in the Oregon federal court, said:

"The admittedly true rule is stated by the court to be that the trust will be enforced when the fund is given to a trustee competent to take, and the charitable use is so far defined as to be capable of being specifically executed. It is contended by the plaintiff that to this rule should be added the qualification that the object of the trust and the beneficiaries must depend upon the will of the testator, and not upon that of other parties. As to this it is clear that, if the will of the testator does not indicate the beneficiaries of his bounty, no other or substituted will can, and the charity must fail, as all charities must in like cases, not because of any want of provision on the part of the testator, but because the nature of such charities does not admit of their execution."

In *Morice* v. *Bishop of Durham,* 10 Ves. Jr. (Eng.) 539, Lord Elden said:

"There was a principle suggested by all other cases of trust, that if a trust was declared in such terms, that this court could not execute it, that trust was ill declared, and must fail, for the benefit of the next of kin. * * as it is a maxim, that the execution of a trust shall be under the control of the court, it must be of such a nature, that it can be under that con-

trol; so that the administration of it can be reviewed by the court; or, if the trustee dies, the court itself can execute the trust. * * Then, looking back to the history of the law upon this subject, I say, with the Master of Rolls, that a case had not yet been decided in which the court has executed a charitable purpose, unless the will contains a description of that, which the law acknowledges to be a charitable purpose."

*Grimmond* v. *Grimmond*, [1905] App. Cas. (Eng.) 124; *Read* v. *Williams*, 125 N. Y. 560 (26 N. E. 730, 21 Am. St. Rep. 748); *Wheeler* v. *Smith*, 9 How. (U. S.) 55 (13 L. Ed. 44); *Houston* v. *Burns*, [1918] App. Cas. (Eng.) 337; *Minot* v. *Attorney General*, 189 Mass. 176 (75 N. E. 149); *Hunter* v. *Attorney General*, [1899] App. Cas. (Eng.) 309; *Pennoyer* v. *Wadhams*, 20 Or. 274 (25 Pac. 720, 11 L. R. A. 210); *Attorney General* v. *Brown*, [1917] App. Cas. (Eng.) 393; *Olliffe* v. *Wells*, 130 Mass. 221; *Johnson* v. *Johnson*, 92 Tenn. 559 (23 S. W. 114, 36 Am. St. Rep. 104, 22 L. R. A. 179).

In the prior litigation involving the construction of the Wemme trust, whether the trust was void as a whole for indefiniteness was left open by Mr. Justice RAND in *Wemme* v. *First Church of Christ, Scientist*, 110 Or. 179 (210 Pac. 618, 223 Pac. 250). In *Wemme* v. *First Church of Christ, Scientist*, 115 Or. 281, at page 289 (237 Pac. 674), Mr. Justice COSHOW declared the will "ambiguous." In the federal district court, Judge WOLVERTON expressed the opinion that the trust was void. I earnestly contend that the trust attempted to be created by Mr. Wemme is void for indefiniteness, and because of the discretion vested in the churches to use the fund for noncharitable objects.

But it is said that clause 6 of Wemme's will does not constitute an entire scheme and that the White

Shield Home features of the trust can be saved, and the discretion vested in the churches to discontinue the operation of the White Shield Home ignored. This would not save the White Shield Home, as it had been sold by the churches to the Salvation Army about eight years ago, and since that time the Christian Science churches have renounced the trust. But if this situation did not exist, nevertheless the Wemme trust bears no semblance to a severable scheme. The exclusive discretion vested by Wemme in the churches to use the income of the fund for the White Shield Home, or for suffering humanity, excludes the idea that there could be a separation of the trust, for this would constitute the taking away from the churches the very power which Wemme vested in them because of his implicit faith and confidence.

We are confronted with the fact that we cannot respect certain parts of Wemme's will and ignore other parts of it, because of the fact that Wemme indicated in no way what part to respect, and what part to ignore. I therefore must take clause 6 of the will as an entire scheme and inseparable.

In *Clossett* v. *Burtchaell*, 112 Or. 585, 619 (230 Pac. 554), Mr. Justice RAND said:

"In the instant case there can be no separation of the trust created by the will whereby a part may be held valid and the rest invalid, without doing violence to the intention of the testator. It is all one entire scheme and no part of the scheme intended by the testator can be carried out except through the trust itself. If the trust is illegal, the entire plan of the testator must fail."

The principle on which Mr. Justice RAND based his opinion is too well settled to be questioned. See *Hunter* v. *Attorney General*, [1899] App. Cas. (Eng.)

309; *Tilden* v. *Green*, 130 N. Y. 29 (28 N. E. 880, 27 Am. St. Rep. 487, 14 L. R. A. 33); *Bailey* v. *Buffalo Loan Co.*, 213 N. Y. 525 (107 N. E. 1043); *Central Trust Co.* v. *Egleston*, 185 N. Y. 23 (77 N. E. 989); *Boal* v. *Metropolitan Ins. Co.*, 298 Fed. 894; *Herzog* v. *Title Guarantee & Trust Co.*, 177 N. Y. 86 (69 N. E. 283, 67 L. R. A. 146); *Re Fair*, 132 Cal. 523 (60 Pac. 442, 64 Pac. 1000, 84 Am. St. Rep. 70); *Hewitt* v. *Green*, 77 N. J. Eq. 345 (77 Atl. 25); *Lilley's Estate*, 272 Pa. 143 (116 Atl. 392, 28 A. L. R. 366); *Lyons* v. *Bradley*, 168 Ala. 505 (53 South. 244).

The following cases seem to me to preclude the idea that, where a charitable trust good on its face is coupled with an option to the trustee to disregard it at will and apply the fund to purposes noncharitable in its discretion, the bequest may be sustained by cutting up the will piecemeal: *Clossett* v. *Burtchaell*, 112 Or. 585 (230 Pac. 554); *Crim* v. *Williamson*, 180 Ala. 179 (60 South. 293); *In re Sutro*, 155 Cal. 727 (102 Pac. 920); *Bristol* v. *Bristol*, 53 Conn. 242 (5 Atl. 687); *Fairfield* v. *Lawson*, 50 Conn. 501 (47 Am. Rep. 669); *Lepage* v. *McNamara*, 5 Iowa, 124; *Wilce* v. *Van Anden*, 248 Ill. 358 (94 N. E. 42, 140 Am. St. Rep. 212, 21 Ann. Cas. 153); *Taylor* v. *Keep*, 2 Ill. App. 368; *Grimes* v. *Harmon*, 35 Ind. 198 (9 Am. Rep. 690); *Spalding* v. *St. Joseph Ind. School*, 107 Ky. 382 (54 S. W. 200); *Maught* v. *Getzendanner*, 65 Md. 527 (5 Atl. 471, 57 Am. Rep. 352); *Gambell* v. *Trippe*, 75 Md. 252 (23 Atl. 461, 32 Am. St. Rep. 388, 15 L. R. A. 235); *Nichols* v. *Allen*, 130 Mass. 211 (39 Am. Rep. 445); *Minot* v. *Attorney General*, 189 Mass. 176 (75 N. E. 149); *Attorney General* v. *Soule*, 28 Mich. 153; *Wheelock* v. *American Tract Soc.*, 109 Mich. 141 (66 N. W. 955, 63 Am. St. Rep. 578); *Jones* v. *Patterson*, 271 Mo. 1 (195 S. W.

1004, L. R. A. 1917F, 660); *German Land Assn.* v.
*Scholler,* 10 Minn. (Gil. 260) 331; *Van Syckel* v. *John-
son,* 80 N. J. Eq. 117 (70 Atl. 657); *Tilden* v. *Green,*
130 N. Y. 29 (28 N. E. 880, 27 Am. St. Rep. 487, 14
L. R. A. 33); *In re Shattuck,* 193 N. Y. 446 (64 Am.
St. Rep. 745); *Bridges* v. *Pleasants,* 39 N. C. 26 (46
Am. Dec. 94); *Brennan* v. *Winkler,* 37 S. C. 457 (16
S. E. 190); *Fifield* v. *Van Vyck,* 94 Va. 557 (27 N. E.
446, 64 Am. St. Rep. 745); *Ruth* v. *Oberbrunner,* 40
Wis. 238; *Wheeler* v. *Smith,* 9 How. (U. S.) 55 (13
L. Ed. 44).

In addition to the Wemme trust being void at its
inception, it has become further crippled during the
course of its administration. Shortly after the origi-
nal trustees under the will turned over the White
Shield Home and the E. Henry Wemme Endowment
Fund to the Christian Science churches in 1919, they
sold the White Shield Home to the Salvation Army
and invested the proceeds of the sale in land at Neff,
Oregon, pursuant to a plan to establish a Christian
Science Foundation at that place. They claimed that
Wemme created no trust, legal or otherwise, and that
all the assets left by Wemme under clause 6 of the
will was a direct gift to them. In the suit involving
this question between the churches and the Attorney
General, this court held that Wemme intended to
create a trust, and that the churches were not the
owners of the property: *Wemme* v. *First Church of
Christ, Scientist, supra.* Thereupon, new trustees
were appointed and an attempt was made by them
to recover the White Shield Home in which they
failed. See *Wemme* v. *First Church of Christ, Sci-
entist,* 115 Or. 281 (237 Pac. 674). It appears from
the record of this case before us by admission of
the defendant trustees that they and the Attorney

General do not question the title· of the Salvation Army and that they regard the transfer as valid and final. See *Burbank* v. *Burbank,* 152 Mass. 254 (25 N. E. 427, 9 L. R. A. 748). And the defendant trustees plan to erect a new maternity home in lieu of the White Shield Home built by Wemme's original trustees under the terms of the will. But I do not find any power in the will, even if otherwise valid, to build another maternity home. The White Shield Home was sold by the Christian Science churches under a power in the will, and their renunciation of the trust precludes the delegation of their powers to others if the power to them was made exclusive by Wemme: *Fontain* v. *Ravenel,* 17 How. (U. S.) 369 (15 L. Ed. 80); *Larkin* v. *Wikoff,* 75 N. J. Eq. 462 (72 Atl. 98, 79 Atl. 365). Besides, it appears that the need for an additional maternity home does not exist, and when the court is confronted with such a situation arising after the partial execution of the trust, it will not waste the fund in a useless purpose even if authorized to do so: *In re Prison Charities,* 16 Eq. Cas. (Eng.) 129.

The Child Welfare Commission in its official report to the Governor states that the needs of the unmarried mother and delinquent girl are well supplied in the existing institutions. I insert this part of the report:

"Letters of Transmittal.

"To His Excellency, the Governor and the Honorable Senate and House of Representatives:

"Section 9841, Oregon Laws, provides that—

" 'The Child Welfare Commission shall from the reports of its members, inspectors and visitors, and from the annual reports of the various agencies and institutions, prepare a comprehensive biennial report of child welfare work within the state, accompanied

by special comments and recommendations; and such report shall be published at state expense for the information of the legislature and for distribution among the people.'

"In accordance with this section we herewith transmit the following biennial report for the period ending September 30, 1926.

"Respectfully submitted,

"Judge Mary J. Spurling,

"Dr. Philip A. Parsons,

"Dr. James W. Rosenfeld,

"Milton A. Miller, Chairman.

"Delinquent Girls and Unmarried Mothers—Comparison between capacity and average daily census in institutions for delinquent girls and unmarried mothers.

"A study of the reports of the past biennial received from the four private institutions caring for delinquent girls and unmarried mothers reveals the fact that there has been a steady decrease in the average daily census of these institutions. Going back to the previous biennial, we find that in 1923, the average daily census was 217. In 1926, the average daily census was 186. The combined capacity of these institutions is 267. It is very apparent therefore that for the past year, the institutions were only running about two-thirds of their capacity. If this decrease should continue, it would appear that ultimately there will come the necessity of changing the functions of one of these institutions, in order that it might devote itself to a field of work not so well covered as the work of the unmarried mother and delinquent girl."

Mr. George Ehinger, secretary of the Child Welfare Commission, testified that in the existing institutions the unmarried mother occupied only a fractional part of the unused available facilities, and that building a new maternity home would be a useless

expenditure as it would only add competition for the small number of such cases.

In concluding his testimony, he said:

"Q. Now, is there in your opinion any need for any more institutions to take care of maternity cases, that is illegitimate cases, in Multnomah County or State of Oregon at this time? A. No.

"Q. Based upon your knowledge and experience in these matters for the last five years, would you say there was any prospective need for such institutions in Multnomah County or the State of Oregon. A. No."

The defendant trustees or the Attorney General in no way contradicted this evidence or called any witness to testify otherwise. As it is the official report of the Child Welfare Commission of the State of Oregon and its secretary, I am satisfied that it is true. Under these circumstances, unless there is authority in the will, or we have *cy pres* power, the gift must fail, even if valid at its inception. The will speaks for itself and shows that Wemme's benevolence was confined either to the White Shield Home or to suffering humanity at the discretion of the churches. There is no general charitable intent in the will. No cause or purpose is held up as the object of the trust apart from the power given to the churches to operate the White Shield Home or give the fund to suffering humanity: *Quimby* v. *Quimby*, 175 Ill. App. 367; *Biscoe* v. *Jackson*, 56 L. J. Ch. (Eng.) 540; *In re Wilson*, [1913] 1 Ch. (Eng.) 314.

We have already said that a gift to suffering humanity is not a legal charity. And as the only specific object Wemme had in mind failed, we cannot exercise prerogative powers. If the trust were

valid, the power to the churches being exclusive and based on implicit faith and confidence, the renunciation of the trust by them would for that reason bring about a lapse. See *Fontain* v. *Ravenel,* 17 How. (U. S.) 368 (15 L. Ed. 80, see, also, Rose's U. S. Notes); *Beekman* v. *Bonser,* 23 N. Y. 298 (80 Am. Dec. 269); *Penny* v. *Turner,* 2 Phill. (Eng.) 493; *Gambell* v. *Trippe,* 75 Md. 252 (23 Atl. 461, 32 Am. St. Rep. 388, 15 L. R. A. 235); *Down* v. *Worrall,* 1 My. & K. (Eng.) 561; *Hadley* v. *Hadley,* 147 Ind. 423 (46 N. E. 823); *Cole* v. *Wade,* 16 Ves. Jr. (Eng.) 27; *Fordyce* v. *Bridges,* 2 Phill. (Eng.) 497; *Crampton* v. *Rutledge,* 157 Ala. 141 (47 South. 214, 5 A. L. R. 339).

Besides, if there were *cy pres* power available, it could not be used here because of the rule that when the testator himself has designed the method of administering the trust, the plan must be followed. Wemme having given to the churches the only power to change the object of his bounty, no one else can exercise that power even if the trust were valid.

In *Larkin* v. *Wikoff,* 75 N. J. Eq. 462 (72 Atl. 98, 79 Atl. 365), it is held, substantially, that when the testator himself has expressly provided for the situation arising in the event that his particular intention cannot be carried out, then his own direction is controlling and there is no room for the application of the *cy pres* doctrine. There is no *cy pres* power in Oregon.

Chief Justice Wilmot in *Attorney General* v. *Lady Downing,* Ambl. 571 (97 Eng. Reprint, 1, 13), said:

"The court thought one kind of charity would embalm his memory as well as another, and being equally meritorious would entitle him to the same reward."

In England, under the prerogative power of the king, many defective charities were made effective. But we have no such power.   Our power in interpreting wills or administering trusts is limited to the carrying out of the wishes of the testator as expressed by him.

In *Trustees of M. E. Church* v. *Adams,* 4 Or. 77, 82, the court said:

"But the peculiar jurisdiction of the Court of Chancery over the subject of charitable uses, as it existed at common law and under the statute of 43 Elizabeth, and exists in many of the older states, where, as in Massachusetts, the principles of the statute of 43 Elizabeth still prevail, does not particularly affect this case.   Equity jurisdiction, as administered by the courts of this state, derives its authority from the constitution and laws of Oregon, and includes only the ordinary jurisdiction of the Court of Chancery of England, modified and extended by the statutes of this state, and the changes in the condition of the affairs of our community."

This rule was approved by Judge WOLVERTON in *In re John's Will,* 30 Or. 494 (47 Pac. 241, 346, 50 Pac. 226, 36 L. R. A. 242).   See, also, Perry on Trusts, 1196.   In Volume 4, Laws of England, 197, the Earl of HALSBURY says:

"On the failure of a gift which is not charitable in the legal sense the *cy pres* doctrine is not applicable."

See *Attorney General* v. *The Haberdashers,* 1 My. & K. (Eng.) 420; *Thomson* v. *Shakespear,* 1 De G., F. & J. (Eng.) 399; *Carne* v. *Long,* 2 De G., F. & J. (Eng.) 75.

Even if there were no gift to suffering humanity at the discretion of the churches, and Wemme's postmortem activities were confined solely to the White

Shield Home, its sale, with no need for an additional institution and no further power in the will, would cause the trust to lapse: *Teele* v. *Bishop of Terry,* 168 Mass. 341 (47 N. E. 422, 60 Am. St. Rep. 401, 38 L. R. A. 629); *Gilman* v. *Burnett,* 116 Me. 382 (102 Atl. 108, L. R. A. 1918A, 794); *Bancroft* v. *Maine States San.,* 119 Me. 56 (109 Atl. 585); *Quimby* v. *Quimby,* 175 Ill. App. 367; *Allen* v. *Nasson Inst.,* 107 Me. 120 (77 Atl. 638); *Murphy* v. *McBride,* 14 Del. Ch. 457 (130 Atl. 283); *Pres. & Fellows of Har. Col.* v. *Jewett,* 11 Fed. (2d) 119; *In re Packe,* [1910] 1 Ch. (Eng.) 437; *In re White,* 33 Ch. Div. 499; *Randall* v. *Dixon,* 38 Ch. Div. (Eng.) 213; *Bowden* v. *Brown,* 200 Mass. 269 (86 N. E. 351, 128 Am. St. Rep. 419).

So, in addition to the trust being void for indefiniteness, it has also lapsed, because of the sale of the White Shield Home, the renunciation of the trust by the churches, and the absence of need of an additional maternity institution. Under these circumstances, a resulting trust arises in favor of the plaintiff, residuary legatee: *Nichols* v. *Allen,* 130 Mass. 211 (39 Am. Rep. 445).

For the foregoing reasons I dissent from the majority of my associates and am of the opinion that the decree of the Circuit Court should be reversed.